ELIZABETH B. MASON v. JOHN MASON.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued November 4, 1889—Decided January 6, 1890.

[To be reported.]

| 131 | 161 |
|-----|-----|
| 191 | 476 |

| 131 | 161 |
|-----|-----|
| f195 | 410 |

| 131 | 161 |
|-----|-----|
| 22 SC | 573 |

| 131 | 161 |
|-----|-----|
| 31 SC | 56 |

| 131 | 161 |
|-----|-----|
| f39SC | 655 |

Evidence that, in addition to habitual drunkenness, ill-temper and neglect to provide the necessaries of life, a husband has subjected his wife to a course of most abusive and humiliating treatment, comprising public and repeated charges of adultery and abortion, and repeated threats to kill, accompanied by acts manifesting a purpose to execute them, is sufficient to justify a decree of divorce upon the ground of indignities to the wife's person, rendering her condition intolerable and life burdensome, etc.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-IAMS, McCOLLUM and MITCHELL, JJ.

No. 185 October Term 1889, Sup. Ct.; court below, No. 326 September Term 1888, C. P. No. 1.

On July 14, 1888, Elizabeth B. Mason filed her libel against her husband, John Mason, averring that the defendant had offered such indignities to the person of the petitioner as to render her condition intolerable and her life burdensome, and thereby forced her to withdraw from his house and family; praying for a divorce. A subpœna and an alias subpœna awarded thereon were returned non est inventus, and service upon the defendant was made by publication. The court thereupon appointed *Mr. Joseph M. Swearingen* commissioner to take testimony respecting the allegations contained in the libel.

At the hearing before the commissioners, on March 27, 1889. the defendant not appearing, the plaintiff was called simply to prove the fact of her marriage to the defendant, which took place on February 21, 1886. Several other witnesses were called at this and subsequent hearings, whose testimony was substantially to the following effect:

Shortly after their marriage the plaintiff and defendant resided for a few weeks with the parents of the former. During

Opinion of Court below.

the remainder of the time they lived together as husband and wife, they were keeping house in various localities in the city of Pittsburgh and its vicinity. The defendant was addicted to drunkenness to such an extent that his occupation was very much interrupted thereby and very irregularly followed. He did not provide properly for his wife's maintenance, and during a large part of the time she would have been entirely without food or decent clothing, had these not been supplied by her parents. The defendant was not regular about staying at home, and would frequently be absent for a week at a time. With great frequency he would come home drunk, scold his wife and treat her rudely, and call her a whore and other vile names, in the presence of other people, charging her with going with other men and with having procured an abortion upon herself. He frequently made threats of violence against her, saying that he would shoot her, blow her brains out the first chance he had, cut out her bloody heart, or cut her throat with a razor. On one occasion, while scolding his wife in a fit of drunkenness, he pulled a razor out of his pocket and said he would cut her into mince-meat, when her father interfered and ordered him to put the razor away. On another occasion he became angry and pushed her off the porch of the house in which they were living. He often threatened to leave the plaintiff, and one day threw all the furniture and carpets out into the street and tried to sell them. In the evening of the same day he came home intoxicated, burst open the door of the house and raised a disturbance such that his wife sent for the police and had him arrested. The next day her father came and took her and her goods to his home.

The testimony having been filed in court by the commissioner, the case came up regularly for hearing upon the argument list, and on July 20, 1889, the court in banc entered a decree refusing to grant the libellant's petition, SLAGLE J, filing the following opinion :

The application for divorce in this case is upon the ground of indignities to the person. The proof shows no actual violence, though the witnesses testify to threats upon one or two occasions. The testimony does show that the husband was frequently drunk, and when in that condition made grave

charges against her, and used vile and abusive language. In May v. May, 62 Pa. 206, the court says: "No single act of indignity to the person is sufficient for a divorce. There must be such a course of conduct or continued treatment as renders the wife's condition intolerable or life burdensome. It need not necessarily endanger life, but such as would render it too humiliating and burdensome to bear." We do not think the facts of this case bring it within the proper application of the law.

Thereupon the libellant took this appeal, specifying that the court erred " in refusing a decree of divorce."

*Mr. C. A. O'Brien*, for the appellant:

Proof of actual violence is not required upon an application for divorce upon the ground of indignities to the person; it is not essential even to establish cruel and barbarous treatment; proof of conduct such as endangers the wife's life or renders co-habitation with her husband unsafe being sufficient for that: May v. May, 62 Pa. 206. In such a case as the present it is not requisite that the acts done should endanger life: May v. May, supra. What course of conduct will amount to indignities affording a ground for divorce, is not and cannot be precisely defined: Richards v. Richards, 37 Pa. 227. The manifest intention of the law was to recognize a woman's human feelings, and give relief when her life is wilfully and purposely embittered and ruined by a husband who, while he withholds the blow that might kill or injure health, makes her life with him one of punishment and degradation: Elmes v. Elmes, 9 Pa. 167; Doan v. Doan, 3 Clark 332.

No appearance for the appellee.

OPINION, MR. JUSTICE WILLIAMS:

The appellant based her application for a divorce a vinculo matrimonii upon the ground that the defendant had "offered such indignities to the person of the petitioner as to render her condition intolerable, and her life burdensome." The appellee was not found by the sheriff, and the appellant was for that reason incompetent as a witness in her own behalf, but she

presented to the court, on final hearing, what seems to us a strong case. The evidence showed that her husband was in a state of almost constant intoxication, so gross as to be at times unfitted for labor. It showed that the little he did earn went in great part for drink, and that his wife was often left without the commonest necessaries of life, except as they were supplied by her father and his family. It showed that from their marriage, in February, 1886, to August, 1887, when her father took her back to his own home, her husband was ill-natured and unreasonable in his treatment of her; that he was habitually finding fault with her and with all she did; that he called her a whore, charged her publicly with committing an abortion upon herself, and with running after other men. It showed frequent threats of personal violence, such as the threat to kill her, to blow out her brains, to cut her heart out, to fix her, and other similar expressions. But it went still further, and showed actual violence attempted, and to some extent accomplished. On one occasion he drew a razor, and said he would cut her into mince-meat. Her father interfered, and compelled him to put the razor up. At another time, in a fit of anger, he shoved her off the porch of their dwelling. Finally, he pulled up the carpets, and threw them, together with their household furniture, into the street, and offered them for sale. Her father then came, and took his daughter and her household goods back to his own home.

Such a course of conduct as is disclosed by this testimony fully justifies the complaint of the appellant that her husband had offered such indignities to her person as to render her condition intolerable, and her life burdensome. Bad temper alone is not a ground for divorce, nor is mere drunkenness, or indolence, or thriftlessness, or jealousy; but when to all these is added a course of the most abusive and humiliating treatment, public and repeated charges of the crimes of adultery and abortion, threats to shoot, to kill, to cut out her heart, to cut her into mince-meat, and the like, accompanied by such unmistakable evidences of his purpose to carry his threats into execution as was offered by drawing a razor, by pushing her off the porch of the house, and by breaking up her home, and throwing its contents into the streets, it seems very clear to us that the condition of this wife was made intolerable, and her life burden-

some. To deprive her of food and other necessaries of life is an indignity to her person. To assault her with a razor, or inflict violence upon her is an indignity to her person. To put her in mortal terror by repeated threats to kill is as truly destructive to health as to administer poison. It may not be as speedy, but, if continued, it is certain destruction to both mind and body. It banishes peace and security and comfort from her home, and puts fear, a sense of constant peril, and a blighted domestic life in their place. The learned judge of the court below held the rule too stiffly in this case.

> The decree dismissing the petition is reversed, and a decree of divorce a vinculo matrimonii is now entered in favor of the appellant, with costs.