## Kusebauch v. Kusebauch

*V. C. Short*, for libellant.

THOMPSON, J., February 14, 1947. — Libellant, Helen Slogan Kusebauch, filed a libel for divorce on the grounds of cruelty and indignities. The action was not contested.

The parties were married on February 16, 1944, while respondent, Anton Karl Kusebauch, was in the service. Libellant joined him at his Army base on May 7, 1944, and lived with him until July 20, 1944, when respondent was sent overseas, and libellant "came home". The testimony does not disclose whether the parties ever established a home of their own or to what home libellant returned.

It appears that upon respondent's discharge from the Army, he "came home" on October 5, 1945, when the parties went to live together at the home of his parents at 955 Jackman Avenue, Avalon, Allegheny County, Pa. Late on the evening of October 30, 1945, respondent "asked" libellant to "leave and go home" and on November 1, 1945, libellant left and went back to her mother's home, where she has resided since. The sole testimony in support of libellant's action is as follows:

"Mr. Short:

"A. Yes. He asked me to leave and go home. I left him on the 1st of November. That was late evening when he had told me.

"Q. Tell us more about that. Exactly what did he tell you?

"A. He just told me he was tired being married and didn't want to be tied down, was sorry he had been married, call it off now instead of later.

"Q. Was it as a result of his request or demand that you went home to your parents?

"A. That's right.

"Q. Have you talked with him since that time?

"A. Yes, I have.

"Q. Have you lived with him since that time?

"A. No. I have not.

"Q. In talking with him since have you inquired concerning the possibility of going back again?

"A. Many times.

"Q. What has his attitude been?

"A. He had the same attitude—no.

"Q. He didn't want to go back together?

"A. That's right.

"Q. What reason did he give for taking this position?

"A. It doesn't seem to be too definite. He said he didn't want to be tied down, to go as he pleased and come as he pleased, and not account to anyone for anything."

During the time respondent was in the service, he sent money to libellant, which she put in a bank and which she ultimately turned back to him. Since November 1, 1945, respondent has not been supporting libellant. The record does not disclose that libellant at any time asked respondent for support since she left and does show that at the time of the hearing she was employed.

At the hearing, counsel for libellant appeared to have abandoned the cruelty charge and felt that the evidence was sufficient to support the charge of indignities.

"The Court: The two grounds you allege are cruel and barbarous treatment and indignities to the person.

On just what do you base those? There has been what might be constructive desertion but it hasn't run long enough. What were the indignities?

"Mr. Short: As I view the facts, your honor, the indignities are the refusal of the husband to permit his wife to continue to live with him.

"The Court: That would amount to desertion. Of course it hasn't extended long enough yet. Merely because one says to the other: 'I want to stop this. You go.' Would that single act amount to what the law regards as indignities?

"Mr. Short: I believe that it would. Your honor may not agree with me.

"The Court: If you will, furnish me with some authority on that later on."

A divorce in Pennsylvania cannot be granted unless the statutory provisions are met: Fawcett v. Fawcett, 159 Pa. Superior Ct. 185, where, in reversing the granting of a divorce and dismissing the libel Judge Reno, as spokesman for the court, said (p. 186):

"In a day when elsewhere the dissolution of marriage has become increasingly easy, it is still the unbending rule of this Commonwealth that a divorce decree must be founded upon compelling, imperious reasons, and upon evidence that is clear and convincing. Hartley v. Hartley, 154 Pa. Superior Ct. 176, 35 A. 2d 591.

"Whatever may be the form of the marriage ceremony, the celebrants in this Commonwealth take each other 'for better, for worse, for richer, for poorer, in sickness and in health, to love and to cherish . . .': Allen's Appeal, 99 Pa. 196, 200, Sharswood, C. J."

The conduct charged against respondent, read in a light most favorable to libellant, will in no way support the statutory ground of indignities; Act of May 2, 1929, P. L. 1237, sec. 10($f$), which makes it "lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, in the manner hereinafter provided, . . .:

"(f) Shall have offered such indignities to the person of the injured and innocent spouse, *as to render his or her condition intolerable and life burdensome.*" (Italics supplied.)

Separation, desertion or nonsupport ordinarily do not constitute indignities to the person, although they may be elements in connection with other matters: 27 C. J. S. 589, §44; Headland v. Headland, 88 Pa. Superior Ct. 417, 419; Fisher v. Fisher, 154 Pa. Superior Ct. 497.

The case of Magyar v. Magyar, 12 D. & C. 265, which also distinguishes some of the cases cited by counsel, is an excellent example where an uncontested divorce was refused and the libel dismissed after the master recommended the divorce. In speaking of the failure to support, Reno, P. J., now a member of the Superior Court, said (p. 265):

"Still, he finds that respondent 'failed to support and provide the necessaries of life' for libellant, and this, he says, is sufficient to sustain a divorce on the ground of cruel and barbarous treatment. For this position he cites and relies upon Hansell v. Hansell, 15 Pa. C. C. Reps. 514, and Hartman v. Hartman, 21 Dist. R. 341. The first case is merely a ruling upon a question of evidence. A wife sued her husband for divorce on account of cruelty, and respondent undertook to show that he was insane at the time, and the trial judge ruled that the proof should be received. In the second case, a husband sued his wife for divorce because of cruelties and indignities. He proved repeated and intentional false accusations of marital infidelity and venereal diseases, and a divorce was granted. In neither case was the question of the husband's failure to support or provide necessaries even remotely touched upon. The cases do not support the master's conclusions, and illustrate the fallacy of relying upon unverified text-book citations.

"There are, however, Pennsylvania cases upon the point. Both the Supreme and Superior Courts have in effect said that failure to support and provide necessities of life are elements to be considered in charges of cruelty and indignities. But, so far, neither has granted a divorce where these elements alone were present. These elements have always been found in combination with others, e. g., bad temper, drunkenness, jealousy, abuse, humiliations, false accusations, threats, physical violence: Cf., Mason v. Mason, 131 Pa. 161; Lynn v. Lynn, 76 Pa. Superior Ct. 428. In Roth v. Roth, 15 Pa. Superior Ct. 192, there are, it must be conceded, expressions which might be taken to authorize the view that these elements alone, under some circumstances, might constitute indignities and that position is clearly understandable. But that case will not support a decree for indignities arising from failure to support where, as here, there is no explanation of the reasons for the failure ever to establish a home and where, as here, there is evidence that he supported her, though perhaps inadequately, until the time of one of his alleged acts of cruelty, which the master regards as trivial. In short, the failure to support and provide necessaries can amount to cruelty and indignities only when, in the one instance, it 'endangered the wife's life,' or, in the other, it renders 'her condition intolerable and life burdensome.' "

One of our own cases, much stronger than the case at bar was Verosko v. Verosko, 81 Pitts. L. J. 218, an uncontested case, where the parties, when they lived together at all, resided at the home of libellant's parents. Respondent worked for a few months following the marriage and thereafter quit his employment and refused to work. Respondent never supported libellant. Respondent kept company with other women, received letters from them and on several occasions called libellant a vile name and would never give libel-

lant any explanation of his whereabouts when he stayed away nights and at other times. In refusing the decree, it was stated:

"There is no competent proof to sustain the charges in the libel of cruel and barbarous treatment and indignities to the person. It may be a cause of action for desertion will arise in the course of time. Certainly there is nothing in the testimony to convict the respondent of cruel and barbarous treatment to his wife, nor is there any testimony showing a continuous course of indignities to her person rendering her condition intolerable and life burdensome. All that the testimony shows is that the respondent did not take the responsibility of his marriage seriously, left the libellant with her parents where he found her, went about to suit himself, paid attention to other women, and left the residence of libellant's parents when he was ordered to do so.

"The marriage was no doubt a failure and, as stated, it may be libellant may be entitled to a divorce in due time on the ground of desertion, but we cannot sanction to hasten the divorce on the charges in the libel, for which there is no foundation in fact. The decree will be refused."

In order to sustain a charge of indignities, there must be a course of conduct and not merely an isolated act. The express language of the statute requires that the ill-conduct, in order to constitute indignities to person, must be such *to render the condition of the innocent spouse intolerable and life burdensome.* Unless these consequences are shown to follow from the acts charged, the indignities are insufficient in gravity to support his cause for divorce: Mathias v. Mathias, 114 Pa. Superior Ct. 444, 447; Campbell v. Campbell, 129 Pa. Superior Ct. 106, 112.

The cases cited by libellant do not support her position and are clearly distinguishable on the facts, and have no application to the case at bar. These cases are

Roth v. Roth, 15 Pa. Superior Ct. 192, Sonricker v. Sonricker, 39 Pa. Superior Ct. 652, Lynn v. Lynn, 76 Pa. Superior Ct. 428, Fay v. Fay, 27 Pa. Superior Ct. 328, Russell v. Russell, 37 Pa. Superior Ct. 348, and Hess v. Hess, 131 Pa. Superior Ct. 601.

Were libellant's contentions valid, it would mean that the ground of desertion would be whittled away by a lowering of the time required. It would be a strain upon the language of the statute to permit either wilful desertion or nonsupport to comprise indignities as defined by our Divorce Code.

The charge of indignities as alleged in the libel has not been sustained. As already stated, the charge of cruel and barbarous treatment was abandoned at the hearing by libellant and was not urged on her behalf in the brief filed.

Without deciding the same, it is doubtful if the separation in this case, without more, would amount to wilful and malicious desertion. Attention is called to the recent expression on this subject by our Superior Court in Reiter v. Reiter, 159 Pa. Superior Ct. 344. There, one evening, the wife yelled at the husband, " 'You get out of the house, and if you don't I am going to bash your brains in', and 'I will holler "murder" out the window to make people believe you are trying to harm me.' The libellant then left, the wife saying to him, '. . . and don't try to come back, because I am going to change the locks on the doors . . .'," which she did. In reversing the granting of a divorce on "constructive desertion" and awarding a venire, the court commented upon the desertion in the following language (p. 347) :

"A separation which occurs because the respondent directs or even importunes the libellant to leave, is but a consentable separation. Neither the eagerness of the one, nor the reluctance of the other, nor the acquiescence of both can convert this into a *wilful and malicious* desertion." (Italics supplied.)

Taking judicial notice of the fact that in uncontested cases there may be evidence not presented at a hearing and not wishing to unduly saddle libellant with the effects of res adjudicata following a mere dismissal of her libel, it is felt that justice would better be served if the dismissal were in the nature of a nonsuit and without prejudice to libellant.

### Order

And now, February 14, 1947, it is hereby ordered that a decree of divorce from the bond of matrimony be refused and the libel is hereby dismissed without prejudice.