Matuszek, Admr., *v.* Matuszek, Appellant.

Argued March 4, 1947. Before RHODES, P. J., RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*Irving L. Epstein,* with him *John R. Gaughan,* for appellant.

No one appeared or filed a brief for appellee.

OPINION BY RENO, J., April 16, 1947:

Appellant challenges a decree in divorce against her on a libel charging desertion which, during the hearings, was amended by adding charges of cruelty and indignities.

At the threshold we are confronted by the rules relating to the abatement of actions. The decree was entered on October 30, 1946; libellant died December 12,

1946; on January 16, 1947, his death was duly suggested and his administrator substituted; and two days later this appeal was taken. Divorce proceedings pending at the death of either party are abated thereby, and the personal representatives of deceased parties cannot be substituted. *Upperman v. Upperman,* 119 Pa. Superior Ct. 341, 181 A. 252, approving *Hammond v. Hammond,* 9 D. & C. 228. But where libellant dies after a final decree in his or her favor, and the dissolution of the marriage involves property rights, it is generally recognized that his death does not work such an abatement as will prevent an appellate court from reviewing the decree at the instance of the respondent. 15 Standard Practice, Divorce, Separation, and Annulment, §203. "Otherwise, a divorce unfounded in fact or in law might be made final against a respondent by the mere accident of appellee's death. An innocent respondent might thereby be deprived of a surviving spouse's interest in the estate of the deceased appellee": 2 Freedman on Marriage and Divorce, §700.

Our cases are in harmony with these views. The Upperman case was reviewed by this court, although the respondent-appellant died after she had taken the appeal and before the argument here, and the final decree in favor of the libellant was reversed upon a showing that a property right or claim was involved. In *Rutherford v. Rutherford,* 152 Pa. Superior Ct. 517, 525, 32 A. 2d 921, the court below had entered two decrees, one granting a divorce a mensa et thoro to the wife, and another refusing a divorce a. v. m. to the husband. The husband, who was appellant there, died pending his appeals, and both were abated. His appeal from the refusal to grant him a decree a. v. m. was abated because it was an appeal from an order *refusing* a decree, and this court has "never ordered a decree to be issued in favor of a deceased libellant, who had been refused a divorce by the court below." The appeal from the decree granting a divorce a mensa et thoro to the

wife was abated because: "She asked and was granted a divorce from bed and board, which is little more than an adjudication that she could live apart from her husband without being guilty of desertion. She still remained his wife. If the decree were reversed, she would still be his wife. Hence appellant's death before the argument and decision of the appeal abated it." No property interest was involved in these appeals.

In *Sheinker v. Sheinker,* not reported but referred to in the *Rutherford* case, supra, (p. 524), "where the respondent, appellant, died after the argument of his appeal from a decree granting his wife a divorce from the bond of matrimony" this court entered an order abating the appeal, "there being no special property rights involved which would call for action by this court." For a discussion of the effect of the decisions in *Nacrelli v. Nacrelli,* 87 Pa. Superior Ct. 162, affirmed in 288 Pa. 1, 136 A. 228, see 2 Freedman, supra.

The survival of the action and the right of an appellant to be heard upon an appeal from an adverse final decree in divorce where the successful party is dead depend upon the presence of a property right. Ordinarily the record in a divorce proceeding will not reveal the interest, since the testimony in a divorce case is generally limited to evidence relating to the grounds alleged in the libel, and a property interest is likely to appear only incidentally. Hence it is not necessary that the record affirmatively show that property rights are involved. Thus, in the *Upperman* case the record did not disclose a property right other than an estate by the entireties, but since the wife, who was the respondent and appellant, died pending the appeal, this court held (p. 352): "The liability of the husband for the [her] funeral expenses, however, would be such a property right or claim as would be directly involved by the determination of this proceeding." The court also said: ". . . a divorce proceeding is of such a character that after a decree is entered, other than property

rights are involved. The state is still interested in determining whether the divorce proceeding was properly decided." But in the *Rutherford* case, *Upperman v. Upperman* was approved only because (p. 524) : "Property rights, were involved in that case." The interest of the state seems to have been ignored as a reason supporting the survival of the action, and the doctrine of the *Upperman* case has probably been modified and limited in its application by. the later expression of this court.

In the instant case a property right, or at least a financial claim arising out of and derived from the death of the libellant, clearly appears upon the record before us. In a petition filed in this court for leave to argue the appeal upon the original record, appellant averred that libellant "met with an accidental death while employed in the mines in the City of Scranton . . . and at the time of his death . . . was still under the said order of support." A copy of the petition was served upon counsel for appellee who filed no answer, and consequently we accept the averment as true. Appellant, therefore, has a workmen's compensation claim arising out of the death of her husband which is valid only if at the time of his death she was his widow and dependent upon him within the terms of the Workmen's Compensation Act, as last amended by the Act of May 18, 1945, P. L. 671, §307, 77 PS §562. This is a sufficient showing of a property right to prevent the abatement of her appeal.

The parties were married February 28, 1929, and lived together until early in 1943, when a controversy arose over the matter of unpaid family bills. Libellant testified that there was approximately $600 owing to various tradesmen for an appreciable period of time, and that he discontinued his policy of allowing his wife to handle the family finances. On the other hand, respondent testified that libellant had never adequately provided for the family; that the economic conditions of

the Depression made it impossible to pay the bills; that he had stopped her credit, refused to give her money for necessities, and retained the grocery store credit book. Subsequently, respondent instituted nonsupport proceedings, and at a conference in the court house it developed that respondent no longer wished libellant to occupy the family habitation. Upon the advice of the probation officer, libellant agreed that a support order should be entered against him, and lived apart from his family until his death.

This was a separation by consent of the parties. *Olson v. Olson*, 27 Pa. Superior Ct. 128. An effort was made to show offers of reconciliation by libellant but the learned president judge, who heard the case without the intervention of master or jury, very properly remarked: "It is doubtful whether either of the parties were particularly desirious of getting together again." We concur in that judgment, and hold that the separation by agreement was never terminated by a bona fide offer to resume cohabitation. *Wagner v. Wagner*, 121 Pa. Superior Ct. 413, 183 A. 369.

The amendment charging cruelty and indignities was allowed on April 25, 1946, and averred that the offensive conduct began on March 1, 1943. The parties separated on May 14, 1943, and thus the period to which the allegations related was comparatively short, only two and a half months, and for the greater part of that time the parties did not speak together. No act of physical violence occurred after March 1, 1943; if any occurred before that date, it was committed by libellant; and the charge of cruelty can be eliminated from further consideration. The whole difficulty between these parties stemmed from the controversy about the unpaid bills. Libellant himself testified at a hearing before the amendment was allowed: "Well, the only thing is about the bills, no racket or anything like that." On the day after libellant's birthday, March 14, 1943, she gave a party for him after which she left the house, visited with friends,

and refused to return when she was informed that her mother-in-law and sister-in-law had called upon her. Upon her return to the home at nine o'clock that night an argument ensued, and after that, according to the testimony of respondent and her daughter, they ceased speaking to each other. After the amendment was allowed, libellant testified that after March 14th she called him vile names and threw things at him, but these charges, denied by the wife, cannot be reconciled with his previous testimony that there was "no racket or anything like that." A further review of the testimony is unnecessary. The record does not demonstrate a course of conduct within the period covered by the averment which would support a finding of indignities.

No significance attaches to respondent's omission to appeal before libellant's death. Through a clerical error, so the opinion of the court below informs us, neither she nor her counsel were notified of the filing of the final decree, and they secured knowledge of it only after libellant's death. In consideration of this circumstance, the court below granted her leave to file an exception nunc pro tunc to the final decree.

Decree reversed and libel dismissed.