423 A.2d 1242

**Marie SHUDA, Appellant**

v.

**Thomas SHUDA.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1980.

Filed Dec. 19, 1980.

Maureen E. Hogan, Pottsville, for appellant.

William J. Krencewicz, Shenandoah, for appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal from a decree granting a divorce on the ground of indignities. Appellant has also petitioned to have the case remanded to the lower court for consideration under the Divorce Code of 1980, Act of April 2, 1980, P.L. 26, 23 P.S. § 101 *et seq.* It will be convenient to consider first whether we should remand, and then the merits.

–1–

Section 103 of the Divorce Code provides that "[the Code] shall not apply to any case in which a decree has been rendered prior to the effective date of [the Code]." The lower court's decree granting the divorce in this case was entered on August 13, 1979, well before the effective date of the Divorce Code, which was July 1, 1980. However, on July 1, 1980, the decree was on appeal to this court. This sequence of events suggests that we are confronted with the necessity of choosing between two equally plausible but mutually inconsistent interpretations of Section 103 of the Divorce Code. On the one hand, we might say that the Code *cannot* apply to this case because the decree was "rendered" on August 13, 1979, "prior to the effective date of [the Code]." On this interpretation the petition to remand should be denied. On the other hand, we might say that the

Divorce Code *can* apply to this case because a decree is not "rendered" until we decide on appeal that it should be affirmed. On this interpretation, the petition to remand should (barring some other consideration) be granted. We think, however, that an examination of the cases will show that the necessity of such a choice of interpretations is more apparent than real.

When an appeal is taken from a divorce decree, the appeal suspends the effect of the decree. *Commonwealth ex rel. Brown v. Brown*, 254 Pa.Super. 410, 386 A.2d 15 (1978). Some cases suggest that this means the parties are still married. *E. g., Ponthus v. Ponthus*, 70 Pa.Super. 39 (1918). However, the issue in *Ponthus*, as in *Commonwealth ex rel. Brown v. Brown, supra*, and numerous other cases holding that an appeal suspends the effect of a divorce decree, was not whether the parties were still married but whether the dependent party was entitled to support during the pendency of the appeal. *See also, e. g., Oswald v. Oswald*, 263 Pa.Super. 85, 397 A.2d 7 (1979); *Jack v. Jack*, 253 Pa.Super. 538, 385 A.2d 469 (1978). Considerations of public policy require that the dependent party be entitled to support, in the form of alimony pendente lite and the award of counsel fees, before entry of the lower court's decree, lest an unjust action go undefended. Since there is an absolute right of appeal from the lower court's decree, these same considerations require that the dependent party be entitled to support during the pendency of the appeal. It is therefore evident that the suggestion that the parties are still married during the pendency of an appeal cannot be understood as defining their relationship except financially. In other words, we should not say that because the parties are "still married" pending an appeal, the decree divorcing them is not "rendered" until we affirm it.

Some further understanding of the nature of the parties' relationship pending on appeal may be gained from an examination of the cases where during the pendency of the appeal, one of the parties has died. In *Matuszek v. Matuszek*, 160 Pa.Super. 526, 52 A.2d 381 (1947), the husband was

granted a divorce by the lower court, and while his wife's appeal was pending in this court, he was killed in an industrial accident. In holding that the appeal was not abated, we wrote: "Appellant, therefore, has a workmen's compensation claim arising out of the death of her husband which is valid only if at the time of his death she was his widow..." *Id.*, 160 Pa.Super. at 530, 52 A.2d at 383. In other words, if we affirmed the lower court's decree, she would not be his widow, and therefore not entitled to workmen's compensation, since the decree would be effective from the date it was originally entered. *See also, e. g., Tenaglia v. Tenaglia*, 124 Pa.Super. 124, 188 A. 370 (1936); *Upperman v. Upperman*, 119 Pa.Super. 341, 181 A. 252 (1935); 15 Standard Pennsylvania Practice 123; 3 Freedman, Law of Marriage and Divorce in Pennsylvania § 695 (2d ed. 1957).

■ Taken together, the *Ponthus* and *Matuszek* lines of cases support the following propositions: Appeal from a divorce decree suspends its effect. If the decree is affirmed, it is effective from the date it was entered; in retrospect, the parties were not married during the pendency of the appeal. If the decree is set aside, the parties are still married; in retrospect, their marriage was never interrupted. When section 103 of the Divorce Code is construed in the light of these propositions, it becomes evident that the applicability of the Divorce Code to this case depends on our disposition of the case on the merits. For the reasons stated in the balance of this opinion, on the merits we shall affirm the lower court's decree. The decree is therefore effective from the date it was entered; in retrospect, the parties were not married during the pendency of the appeal, which is to say that this marriage ended before the effective date of the Code. It follows that the petition to remand so that the case may be considered under the Code must be denied.

–2–

Appellant argues that she was denied a fair chance to defend on the merits. To appraise this argument, it is

necessary to recount something of the procedural history of the case.

On September 13, 1977, appellant filed a complaint in divorce charging appellee with indignities. More than a year and a half later, after interposing two sets of preliminary objections, appellee filed an answer to the (by then second amended) complaint, including as part of the answer a counterclaim for divorce, also on the ground of indignities. On May 7, 1979, on motion of appellant's counsel, a master was appointed and a hearing was scheduled for June 25, 1979. Written notices of the hearing were served on each of the counsel of record, and their signed acceptances of service are part of the record. However, neither appellant nor her counsel appeared at the master's hearing. After receiving appellee's testimony in support of his counterclaim, the master prepared a report recommending that a divorce be granted to appellee. In keeping with the requirement of Schuylkill County Local Rule 1133(L), the master then notified each counsel of record that his report would be filed on a particular date and that any exceptions to the report had to be filed within 10 days of that date. No exceptions were filed, and on August 13, 1979, the lower court entered its decree granting the divorce. An appeal to this court was timely taken,[1] and on February 4, 1980, the lower court filed its opinion pursuant to Pa.R.A.P. 1925.

Appellant, now represented by new counsel, asserts that "throughout the divorce action she either did not have notice of the various steps of the procedure or did not understand the consequences of same. Although her counsel at that time was notified of the time and place of the hearing, he failed to communicate the information to appellant." Appellant's brief at 1. This assertion is not supported by any

1. At oral argument appellee's counsel suggested that the appeal might not have been timely taken. The basis for this suggestion would appear to be the recitation in appellant's brief, at 2, that the lower court's decree was entered on Aug. 11, 1979, and the appeal taken on Sept. 12. However, the docket entries supplied by the prothonotary of the lower court establish that the decree was entered on August 13.

fact of record. As just noted, the record includes appellant's former counsel's acceptance of service of the notice of the master's hearing. We shall not assume the truth of appellant's unsupported charge that counsel violated his professional obligation to appellant. (In this regard we note that attached to appellee's brief is an affidavit by appellant's former counsel, stating that he notified appellant of the master's hearing and of all dates, times, and places relating to her divorce action.) It therefore appears that appellant did have a fair chance to defend on the merits, and the question becomes whether the evidence submitted to the master by appellee was sufficient to justify the lower court's decree.

In a divorce action our scope of review is extremely broad. *Dash v. Dash*, 357 Pa. 125, 53 A.2d 89 (1947). When a divorce has been heard by a judge without a jury, we are not bound even by the findings of the judge or the master as to the credibility of witnesses, in spite of our lack of personal observation, although we are admonished to give such findings the fullest consideration. *Coxe v. Coxe*, 246 Pa.Super. 231, 369 A.2d 1297 (1976) (SPAETH, J., dissenting) (collecting cases and discussing the scope of appellate review). The reason our scope of review is so broad is that the Commonwealth has an interest in marriage as a foundation of our social structure and a corresponding concern that a divorce not be granted unless the statutory requirements have been fully satisfied. *Nacrelli v. Nacrelli*, 288 Pa. 1, 136 A. 228 (1927); *Middleton v. Middleton*, 187 Pa. 612, 41 A. 291 (1898).

There is a procedural aspect of the present case that must be mentioned as bearing upon our scope of review. In Schuylkill County, as in most other counties, the parties to a divorce action heard by a master are, or were, by local rule given the opportunity to file exceptions to the master's report.[2] Schuylkill County Local Rule 1133(L). Here, as

2. The rules of civil procedure governing divorce actions when this case was heard did not provide for exceptions to the master's report. On June 27, 1980, these rules of civil procedure were rescinded, and

noted above, appellant failed to file exceptions.[3] However, because of the Commonwealth's interest in marriage and divorce, this failure does not result in appellant having waived the right to argue on appeal that the lower court committed error, which would be the result if this were a case involving the failure to file exceptions to the decision of a judge sitting without a jury in an action in assumpsit, Pa.R.C.P. 1038(d), or to the decree nisi of a chancellor in equity, Pa.R.C.P. 1518.[4] In a divorce case, we must still satisfy ourselves that the evidence establishes the right to the divorce. *Romano v. Romano,* 183 Pa.Super. 462, 133 A.2d 273 (1957); *Micheals v. Micheals,* 65 Pa.Super. 464 (1917). *See* 15 Standard Pennsylvania Practice 348. Thus, an appellant in a divorce case who fails to file exceptions to the master's report may still argue to us, as appellant does argue, that the testimony is insufficient to support the master's findings of fact, and that the findings are insufficient to support the grant of a divorce.[5]

Here, the only testimony offered was by appellee. He testified as follows. As of the time of the master's hearing, he was 56 years old and appellant was 61. He and appellant had been married in 1963, and no children were born of their

new rules, keyed to the Divorce Code, were promulgated. The new rules do provide for filing exceptions to the master's report, and state explicitly, as Schuylkill County Local Rule 1133(L) did not, that matters not covered by exceptions are deemed waived. Pa.R.C.P. 1920.55. Because the new rules do not apply to this case we are not required to decide whether Rule 1920.55 is intended to alter our scope of appellate review, and we intimate no opinion on that question.

3. Appellant's petition to this court for a remand to the lower court with leave to file exceptions *nunc pro tunc* was denied on November 29, 1979.

4. *And see* note 2, *supra.*

5. We do not suggest that the failure to file exceptions has no consequence. Arguments not going to the sufficiency of the evidence will be waived. If, for example, a master admits hearsay evidence, and no exception to the admission is filed, the right to argue on appeal that the admission was error will have been waived, although the right to argue that the evidence *as admitted* is insufficient will not have been waived.

marriage. His marital difficulties became serious about two years before the hearing, when appellant transferred various jointly held shares of stock, bonds, savings certificates and certificates of deposit into her name alone. After he brought a law suit, which resulted in his receiving half of what had been in joint names, appellant began a campaign of harassment and name calling. She called him son-of-a-bitch, bastard, no good bum, and worse, and also made a practice of carrying a knife or scissors around with her in a threatening manner and on one occasion came after him with a knife. Appellee said it was his belief that appellant was trying to force him to leave her but that he put up with her behavior as long as he could both because he was a patient man and also because his mother was living in an apartment they owned jointly and he wished to avoid dislocating her. In addition to calling appellee names, appellant expressed the hope that he would go blind and lose his legs. (Appellee explained that appellant knew he had trouble with his eyes and legs.) Because of this harassment, appellee became nervous and had trouble sleeping. After leaving home his health improved. Appellee also testified that he treated appellant well, took care of their properties and jointly owned business, and did nothing to provoke her.

In *Trimbur v. Trimbur*, 171 Pa.Super. 541, 91 A.2d 307 (1952), we described indignities to the person as:

an affront to the personality of another, a lack of reverence for the personality of one's spouse. It consists of various acts, so varied in their nature and impact that the courts have not undertaken to define the offense in more than general terms. *Crawford v. Crawford*, 64 Pa.Super. 30; *Breene v. Breene*, 76 Pa.Super. 568. But the offense is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement. For then, when the foundation has collapsed the superstructure falls and inevitably the married condition becomes intolerable and

life is indeed a burden. This is the doctrine of all the cases. [Citations omitted.]

In the nature of the case, no minimum length of time is or can be prescribed for the completion of the offense. The test is not the period of the conduct but its continuity and severity. In *Mason v. Mason*, 131 Pa. 161, 18 A. 1021, the parties lived together for six months;

\* \* \* \* \* \*

and in *Elmes v. Elmes*, 9 Pa. 166, *one week*. Where, as here, habitual verbal aspersion and imperious demands are accompanied by threats of physical violence, and actually followed by an assault and battery, a case of indignities is abundantly proven. Appellant is entitled to a divorce on the ground of indignities to the person. *Id.*, 171 Pa.Super. at 546–547, 91 A.2d at 309.

*And see Steinke v. Steinke*, 238 Pa.Super. 74, 357 A.2d 674 (1975) (SPAETH, J., concurring) (collecting cases).

■ Appellant argues that the master's statement, in his discussion, that she neglected her duties as a wife, is not clearly supported by appellee's testimony. While this is true, it is also immaterial if the testimony was sufficient to establish grounds for a divorce. Having reviewed the testimony, we agree with the master and with the lower court that the testimony was sufficient to show that appellant engaged in conduct constituting indignities as defined by our cases. She called appellee names, expressed the hope that he suffer physical misfortune, created fear in him for his physical safety, and on one occasion moved beyond purely verbal threats. Also, as noted by the lower court, slip op. at 3–4, while appellant's appropriation to herself of jointly held assets may not by itself have been an indignity, it was certainly not consistent with marital harmony.

Appellant's petition to remand the case to the lower court is denied, and the decree of the lower court divorcing appellant and appellee is affirmed.