456 A.2d 163

James F. REMICK, Appellant,

v.

Audrey A. REMICK.

James F. REMICK,

v.

Audrey A. REMICK, Appellant.

Superior Court of Pennsylvania.

Argued May 21, 1982.

Filed Jan. 28, 1983.

---

24

J. Michael Williamson, Lock Haven, for James F. Remick.

Morton Fromm, Lock Haven, for Audrey A. Remick.

Before CERCONE, President Judge and HESTER, BROSKY, ROWLEY, McEWEN, JOHNSON and POPOVICH, JJ.

CERCONE, President Judge:

These cross appeals arise from a decree of the Clinton County Court of Common Pleas granting the appellee-husband a divorce and ordering him to pay permanent alimony in the amount of $80.00 per week as well as seventy-five percent of the appellant-wife's counsel fees, but denying the wife's petition for alimony pendente lite. We now affirm as to the awards of permanent alimony and counsel fees, but reverse and remand as to the denial of the wife's petition for alimony pendente lite.

James and Audrey were married in 1950. James left the marital home in 1968 and filed the instant divorce action. Although an appearance was entered on Audrey's behalf shortly thereafter the case remained dormant until 1980. In a related though independent matter, James was later ordered to pay $30.00 per week in spousal support. In 1980, James requested permission to amend his original divorce complaint in order to proceed under the new Divorce Code, which permission was granted. James then filed an amended complaint alleging that the marriage was irretrievably broken and averring that the parties had lived separate and apart for more than three years. Audrey thereupon responded with an answer and a counterclaim seeking alimony pendente lite, counsel fees, and permanent alimony. A hearing on the complaint and counter-claim was held before a Master, who recommended that the divorce be granted, that Audrey be awarded alimony pendente lite in the amount of $94.00 per week until the granting of the divorce and permanent alimony in the same amount after the granting of the divorce, as well as that James pay seventy-five percent of Audrey's counsel fees. Both parties filed exceptions to the Master's recommendations. The lower court then entered a decree in divorce, and further, disallowed the recommendation for alimony pendente lite and lowered the amount of permanent alimony to $80.00 a week, but it awarded the counsel fees as the Master had recommended. These timely cross appeals followed. The appeals were originally argued before a panel of this Court. However, due to the significance of the matters raised on appeal the case was subsequently ordered reargued before the Court *en banc*.

## I.

James first argues several alleged errors in the award of alimony to Audrey. Audrey contends in her appeal that the amount of the alimony awarded is insufficient.

Under Section 501 of the Divorce Code [1] alimony may be awarded if the party seeking the alimony

---

1. Act of April 2, 1980, P.L. 63, No. 26 § 501: 23 P.S. § 501.

(1) lacks sufficient property ... to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment

23 P.S. § 501(a).

James now contends that the lower court improperly considered the length of the parties' marriage, the parties' standard of living during the marriage, and James's "marital misconduct" in determining the amount of the alimony awarded. He also argues that there was no evidence of his income before the lower court because Audrey did not formally move the admission into evidence of James's Income and Expense Statement, which was filed in accordance with Pa.R.C.P. 1920.31(a). More fundamentally, James argues that Audrey does not lack sufficient property to provide for her needs, and that she failed to establish by competent evidence that she is unable to support herself through appropriate employment.

Initially we are faced with determining the scope of our review of orders awarding alimony pendente lite, counsel fees or permanent alimony under the new Divorce Code. No Pennsylvania case has yet delineated by what standard under the new act we are to judge such awards, because the Act is silent on this point. We must look then instead to case law under the prior Divorce Act as well as to current, analogous cases.

Under the Divorce Law of 1929,[2] an appellate court would reverse an award of alimony pendente lite and counsel fees only for an abuse of discretion by the lower court. *See, e.g. Oswald v. Oswald,* 263 Pa.Superior Ct. 85, 397 A.2d 7 (1979); *Jack v. Jack,* 253 Pa.Superior Ct. 538, 385 A.2d 469 (1978). Likewise, spousal (or child) support orders[3] were, and still are, reviewed by the abuse of discre-

---

**2.** Act of May 2, 1929, P.L. 1237, § 1 *et seq.,* 23 P.S. § 1 *et seq.* repealed by the Divorce Code, Act of April 2, 1980, P.L. 63, No. 26, § 801, 23 P.S. § 801.

**3.** Actions for spousal support may be filed pursuant to Pa.R.C.Pro. 1910.1 *et seq.* The obligation/right to support is imposed by law as an

tion standard. *See e.g., Stump v. Stump*, 291 Pa.Superior Ct. 65, 435 A.2d 221 (1981), *Commonwealth ex rel. Hartranft v. Hartranft*, 267 Pa.Superior Ct. 572, 407 A.2d 389 (1979). This deference was accorded to the lower court because it saw and heard the witnesses and determined their credibility. *McCurry v. McCurry*, 279 Pa.Superior Ct. 223, 420 A.2d 1113 (1980), *Commonwealth v. Goodyear*, 270 Pa.Superior Ct. 326, 411 A.2d 550 (1979). Since alimony did not come into existence in Pennsylvania until the enactment of the new Divorce Code it has no case history.[4]

 In contrast to the scope of review used in appeals from orders for alimony pendente lite, counsel fees or support, decrees in divorce were examined with an "extremely broad" scope of review. *Shuda v. Shuda*, 283 Pa.Superior Ct. 253, 423 A.2d 1242 (1980). As we explained in *Shuda:*

> The reason our scope of review is so broad is that the Commonwealth has an interest in marriage as a foundation of our social structure and a corresponding concern that a divorce not be granted unless the statutory requirements have been fully satisfied. *Nacrelli v. Nacrelli*, 288 Pa. 1, 136 A. 228 (1927); *Middleton v. Middleton*, 187 Pa. 612, 41 A. 291 (1898).
>
> *Id.* 283 Pa.Superior Ct. at 260, 423 A.2d at 1245–1246.

incident of the marital status and a dependent spouse seeking support need not present as grounds for leaving evidence that would also entitle that spouse to a divorce. Rather, the party need only show an adequate legal cause for leaving. *Larkin v. Larkin*, 262 Pa.Superior Ct. 294, 396 A.2d 761 (1978).

4. Note, however, that Pennsylvania did, under the old law, have a remedy labeled "alimony" or "permanent alimony". However, this award was by law limited only to divorces from bed and board or by reason of insanity, both of which were little more than legal separations. Practically speaking, then, "permanent alimony" under the old Divorce Law performed much the same function as an order for support, a conclusion which this Court reached in *Commonwealth ex rel. Rubin v. Rubin*, 230 Pa.Superior Ct. 591, 326 A.2d 578 (1974). See also note 6 infra, and accompanying text.

By contrast, the type of alimony which is now at issue is a new remedy under Pennsylvania law for it permits an award of alimony following a permanent divorce.

Similarly, in child custody cases the scope of our review is a broad one, subject to the proviso that we do not attempt to nullify the court's fact-finding functions, although we are free to draw our own factual inferences and legal conclusions. *See e.g. Jon M.W. v. Brenda K.*, 279 Pa.Superior Ct. 50, 420 A.2d 738 (1980); *Commonwealth ex rel. Drum v. Drum*, 263 Pa.Superior Ct. 248, 397 A.2d 1192 (1979).

While this Court is very much concerned with orders affecting the property rights of the parties to a marriage or the support of the children from that union, our concern in those, essentially monetary judgments is not as paramount as it is with the decisions ruling on the status of the marriage or custody of the children. Under the new Divorce Code, orders for alimony pendente lite or counsel fees should continue to be reviewed on appeal under an abuse of discretion standard, inasmuch as the character of the remedy continues to remain unchanged. On the same reasoning, alimony orders under the Code should also be reviewed only for an abuse of discretion and not broadly, as is the actual decree in divorce. This approach is in keeping with both the case history developed under the prior law and within the aims of the Divorce Code.

■ James argues that the court improperly considered the length of the parties' marriage and the standard of living they enjoyed during the marriage in fixing the amount of alimony. We cannot agree. Section 501(b) of the Divorce Code reads in pertinent part:

(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

. . . . .

(5) The duration of the marriage.

. . . . .

(8) The standard of living of the parties established during the marriage.

23 P.S. § 501(b)(5) & (8).

In light of the Legislature's express mandate that a court shall consider the very factors of which James now complains, we are at a loss to conclude how the court could have abused its discretion in this regard.

James further objects that the lower court's award of alimony was higher than it should have been because the court considered evidence of James's marital misconduct. Although the statute clearly reads that the court must consider the "marital misconduct of *either* of the parties during the marriage..." 23 P.S. § 501(b)(14) (Emphasis added), James apparently contends that only the marital misconduct of the spouse requesting the permanent alimony should be considered. We have scanned the alimony statutes in other states for guidance and find that some statutes specifically state that marital misconduct may only be considered to bar the dependent spouse from receiving alimony, *see, e.g.* Tenn.Code Ann. § 36–826 (Supp.1981), while others grant alimony upon a showing of marital misconduct on the part of the obligor spouse, *e.g.*, Ohio Rev.Code Ann. § 3105.14 (Page 1980). Pennsylvania's Divorce Code, however, states that the lower court shall consider the marital misconduct of "either" spouse. There is no reason to believe that the Legislature intended this provision to mean anything other than what it says. The lower court was correct in considering James' marital misconduct.

James also argues that there was no evidence before the Master or the court of his income. He contends that Audrey's failure to formally move for the admission of his Income and Expense Statement at the Master's hearing precluded the Master and the court from determining the level of his income. The lower court concluded that the requirement that a statement of this type be filed by each party pursuant to Rule 1920.31(a), and the additional requirement that it be attached to the Master's Report pursuant to Rule 1920.54(a) obviated the need for formally introducing the statement into evidence at the Master's hearing. *See* Pa.R.Civ.P. 1920.31(a) and 1920.54(a). This procedure,

in our opinion was correct and free of error. It has long been held that pleadings can be made part of the record "by offer and admission or *court direction." Volpe v. Atlantic Crushed Coke Co.*, 208 Pa.Superior Ct. 11, 220 A.2d 393 (1966) (Emphasis added). Moreover, we can conceive of no compelling reason to require a formal request for admission of such a statement into evidence when the statement has been prepared and admitted by the very party against whom it is offered.

■ Additionally, James contends that Audrey failed to establish her inability to support herself by appropriate employment. True, Audrey did not present expert medical testimony to verify her physical disability. Her evidence consisted only of her testimony that she receives Social Security disability benefits and a description of her particular physical symptoms. While we agree that a stronger case on Audrey's behalf might have been presented, we do not agree that the record is insufficient to prove her inability to support herself through appropriate employment. It was certainly within the Master's province to observe her, to accept her undisputed testimony as to her physical complaints and her employment experience and training, and to infer therefrom that she is unable to support herself through appropriate employment. *Mirabella v. Metropolitan Life Insurance Company*, 143 Pa.Superior Ct. 500, 18 A.2d 474 (1941).

■ Finally, James argues rather unabashedly that the court erred in awarding permanent alimony in any amount because, as he asserts, Audrey does not lack sufficient property to provide for her needs because of "the proliferation of governmental benefits to which the Defendant would be entitled if she were only to apply for the same...." We approach this argument with a distinct air of incredulity. The record shows that Audrey is currently receiving Social Security disability benefits and living in subsidized housing at a very low rental rate. It appears, therefore, that James is suggesting that Audrey would be eligible for public assistance benefits, and other social wel-

fare benefits and, therefore, does not need alimony. We do not believe the Legislature enacted the alimony provisions of the Divorce Code with the intent that the financial welfare of a dependent spouse should devolve upon the Commonwealth following divorce. The public policy provisions of the Code clearly state that one of the purposes is "to effectuate economic justice between the *parties*...." 23 P.S. § 102(a)(6) (Emphasis added). Just as spousal support is for the purpose of preventing a dependent spouse from becoming a public charge, *Hellman v. Hellman*, 246 Pa.Superior Ct. 536, 371 A.2d 964 (1977), so should permanent alimony be viewed in a similar light. The purpose of social welfare benefits is to subsidize whatever other resources a recipient may have or may be entitled to and should be a last resort, not a first one. See, e.g., *Armlovich v. Commonwealth, Department of Public Welfare*, 49 Pa.Cmwlth. 603, 411 A.2d 893 (1980). (Benefits denied to widow who could have obtained railroad retirement benefits on her husband's account but chose not to.) We conclude that the necessity and amount of permanent alimony should be determined without regard to whether the dependent spouse would be entitled to public assistance or other social welfare benefits absent the payment of alimony.

For her part, Audrey argues on her appeal that the amount of the alimony awarded her is inadequate. However, she too advances no argument to substantiate a claim of abuse of discretion by the lower court in determining the amount of the alimony. Thus, we will affirm the lower court's order as to permanent alimony in all respects.

## II.

Both the Master and the lower court agreed that reasonable attorneys fees in this matter would be $885.00 and that James should pay 75% of this sum, or $664.00. We will not reverse a lower court's decision in such a case absent a plain abuse of discretion. *Young v. Young*, 274 Pa.Superior Ct. 298, 418 A.2d 415 (1980). James's only objection to the award of counsel fees is that much of

Audrey's counsel's time was spent pursuing a frivolous issue in the divorce aspect of the case. Even a brief review of the record disputes this contention. James made no objection to the admission into evidence of an itemized statement of these fees. That statement clearly shows that only one hour out of a total of 14¾ hours was spent on that issue. Even if we assume that the issue counsel investigated was totally meritless (which we need not and do not decide), and considering all of the factors involved, especially the gross disparity of the parties' incomes we do not conclude that the award constituted an abuse of discretion. Thus, we will not reverse the order as to counsel fees.

### III.

Lastly, we consider Audrey's contention that the lower court erred in refusing her request for alimony pendente lite.

The Master recommended that the court award her alimony pendente lite in the amount of $94.00 per week retroactive to the date of the filing of her counterclaim and further ordered that the alimony pendente lite should continue until the granting of a decree in divorce. James filed exceptions to this recommendation arguing that the existence of an outstanding order for spousal support of $30.00 per week barred the award of alimony pendente lite. The lower court granted James's exception to the alimony pendente lite based on the authority of a recent panel decision of this Court: *Thoma v. Thoma*, 284 Pa.Superior Ct. 249, 425 A.2d 797 (1981). At the time the lower court decided the instant case it did not have the benefit of this Court's ruling in *Commonwealth ex rel. Homsher v. Homsher*, 289 Pa.Superior Ct. 112, 432 A.2d 1076 (1981), which reached the opposite conclusion regarding alimony pendente lite vis-a-vis spousal support. Our analysis of *Thoma* as compared with *Homsher* convinces us that the *Homsher* decision is correct and that the lower court wrongfully denied Audrey alimony pendente lite. We therefore remand this case to allow a

determination of an appropriate amount of alimony pendente lite, and, by doing so overrule *Thoma*.

■■■ As we have often stated the purpose of alimony pendente lite is to enable the dependent spouse to maintain or defend the principal action in divorce. See, e.g., *Keller v. Keller*, 275 Pa.Superior Ct. 573, 419 A.2d 49 (1980). It is intended to cover only the period during which the divorce proceeding may, with due diligence, be prosecuted to conclusion, See, e.g., *Heilbron v. Heilbron*, 158 Pa. 297, 27 A. 967 (1893); *Wargo v. Wargo*, 184 Pa.Super. Ct. 587, 136 A.2d 163 (1957). And, it is ancillary to the principal action in divorce. *See* 23 P.S. §§ 104, 401(b). The duty of spousal support, on the other hand arises out of the marital relationship itself and terminates when the marriage ends. See, e.g., *White v. White*, 226 Pa.Superior Ct. 499, 313 A.2d 776 (1973).

The *Thoma* case arose under the old Divorce Law[5]; involved an order granting the wife alimony pendente lite and a subsequent petition by the husband asking the court to cancel the alimony pendente lite. At approximately the same time, the wife filed a separate complaint for spousal support, which the court awarded her soon thereafter. The husband then appealed the support order to this Court. A hearing before the lower court on the husband's petition to cancel the alimony pendente lite was held shortly after the appeal from the support order was taken. The hearing court suggested that the parties ask the Superior Court to remand the support case so that the lower court could consider the question of support and alimony pendente lite at the same time. The husband refused this suggestion, whereupon the lower court denied his request to terminate the alimony pendente lite, and the husband appealed. In the appeal of the alimony pendente lite order, a panel of this Court ruled that allowance of both alimony pendente lite

---

**5.** See Note 2, *supra*.

From the facts recited in the opinion in *Thoma* it is impossible to determine whether it involved a complaint in divorce *a m.e.t.* or a complaint in divorce *a v.m.*

and support was improper and reversed the lower court's order awarding alimony pendente lite to the wife, citing *Commonwealth ex rel. Rubin v. Rubin,* 230 Pa.Superior Ct. 591, 326 A.2d 578 (1974) as authority.

The *Rubin* case involved an action in divorce *a m.e.t.* (*a mensa et thoro*), that is, from bed and board, essentially a legal separation. The issue in *Rubin* was whether an award of permanent alimony [6] ordered as part of a divorce from bed and board, precluded an order for spousal support, and vice versa. This Court in *Rubin* found that one of these remedies precluded the other. In so holding, we looked to a line of cases beginning with *Heilbron v. Heilbron,* 158 Pa. 297, 27 A. 967 (1893) [7] which stand for the proposition that a divorce *a m.e.t.* awarding permanent alimony to the wife is a bar to any action for support on behalf of the wife...." *Marra v. Marra,* 189 Pa.Superior Ct. 180, 184, 149 A.2d 175, 177 (1969). *Rubin,* however, did not address any question pertaining to alimony pendente lite.

The second of the two cases under discussion here, *Homsher,* like *Thoma,* arose under the old Divorce Law. In *Homsher,* the wife left the marital home, whereupon the husband filed a complaint in divorce *a v.m.,* (a vinculo

6. Although in common parlance the term "alimony" or "permanent alimony" is used as a label for the type of support which, previously, was only available in other states following an absolute divorce, under the old Divorce Law the term had a special meaning in Pennsylvania. Whereas the old Law did not allow for alimony following an absolute divorce (divorce *a v.m.*), the Law did permit the courts to award "permanent alimony" where the divorce was from bed and board. The Act of 1929, May 2, P.L. 1237 § 47, 23 P.S. § 47 (1955). It must be stressed that when *Rubin, supra,* refers to "permanent alimony", the Court is talking about alimony following a divorce from bed and board under the Divorce Law of 1929. *Rubin, supra,* 230 Pa.Superior Ct. at 594, 326 A.2d at 580.

7. *Heilbron v. Heilbron,* 158 Pa. 297, 27 A. 967 (1893) involved an action for divorce *a v.m.* The court denied the husband the divorce but awarded alimony pendente lite to continue "until further order of the court." The Supreme Court reversed the order because the husband's liability for alimony pendente lite should have ceased with the entry of the decree denying the divorce sought. The Court also reversed the decree and granted the husband the divorce.

matrimonii), an absolute divorce. The wife responded by filing a complaint for spousal support. The lower court ordered the husband to make a weekly payment in support to his wife as well as pay an additional amount weekly for alimony pendente lite. The husband contended on appeal before this Court that orders for alimony pendente lite and support are mutually repugnant and that the award of one bars the award of the other. The *Homsher* panel did not agree with the husband's contention, and affirmed the order of the lower court, citing *Hutchison v. Hutchison*, 492 Pa. 118, 422 A.2d 501 (1980). In *Hutchison*, the Court wrote, "Support is a cause of action separate and distinct from alimony pendente lite...." 492 Pa. at 121 n. 1, 422 A.2d at 502 n. 1, for which proposition the Court cited approvingly *Belsky v. Belsky*, 196 Pa.Superior Ct. 374, 175 A.2d 348 (1962). A review of the *Belsky* opinion reveals that it squarely addresses the issue, saying

> The purpose of alimony pendente lite is to enable the [financially dependent spouse] to maintain the principal action, and it differs somewhat in character from an order for support. *The existence of an order ... requiring [one spouse] to pay support to [the other] does not prevent the court ... from awarding alimony pendente lite* nor is the refusal of the court ... to enter an order of support a bar to a claim for alimony pendente lite in a subsequent divorce proceeding.... Conversely, neither the existence nor vacation of an award of alimony pendente lite ... is a bar to the securing of an order for support.... The two proceedings may run concurrently. 196 Pa.Superior Ct. at 377–378, 175 A.2d 348 (citations omitted) (emphasis added).

In *Belsky*, this Court also took special note of the fact that even though the complaint then at bar set forth an action for divorce from bed and board, the case did not involve a request for permanent alimony[8] but, rather, a request for alimony pendente lite.

8. See notes 2 and 6, *supra*.

The *Thoma* case relied solely upon *Commonwealth ex rel. Rubin v. Rubin, supra.* However, the *Rubin* case involved a divorce from bed and board with an accompanying award of permanent alimony;[9] at issue in *Thoma* was an order for alimony pendente lite. Secondly, *Thoma* did not take into account the *Belsky* decision, wherein this Court took a view opposite from that in *Thoma.* Thirdly, the Supreme Court in *Hutchinson,* a case which came down several months prior to *Thoma,* took the position, albeit in dictum, that alimony pendente lite served a different purpose from an order for spousal support.

Admittedly, the rule which permits a party to maintain actions both for support and alimony pendente lite is not without its critics,[10] yet we find it to be the better rule.

In brief, the lower court erred when it denied Audrey's petition for alimony pendente lite based on *Thoma v. Thoma,* supra, which prior decision of this Court we now specifically overrule.

Accordingly, the instant case will be remanded to allow the lower court to determine the appropriate amount of alimony pendente lite, if any, to which Audrey is entitled.

Affirmed as to alimony and counsel fees, reversed as to alimony pendente lite and remanded for action below not inconsistent with this opinion. Jurisdiction is not retained.

**9.** *Id.*

**10.** See, Freedman, *Law of Marriage and Divorce in Pennsylvania,* § 442, p. 908: "[T]he reasoning upon which the rule arose is not impressive."