Isabelle Armlovich, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued December 5, 1979, before Judges CRUMLISH, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Catherine A. Davis,* with her *Paul Osborne,* for petitioner.

*Edward P. Carey,* Assistant Attorney General, with him *Linda M. Gunn,* Assistant Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, March 6, 1980:

Isabelle Armlovich (Petitioner) brings this appeal from an order of the Department of Public Welfare (DPW) affirming the decision of the Clearfield County Board of Assistance which denied her general assistance benefits. The sole issue is whether DPW erred in finding Petitioner ineligible for assistance benefits because of her failure to apply for her late husband's railroad retirement benefits. For the reasons which follow, we affirm.

The facts of this case are not in dispute. Petitioner was widowed on April 14, 1976. After her husband's death she supported herself with the proceeds she received from two life insurance policies totaling $7,500 and from the sale of personal possessions such as antiques. When her immediate funds were exhausted, she applied for assistance. On April 12, 1977, she was added to her adult daughter's assistance unit[1] and together they received $219.00 per month.[2] Petitioner's assistance was terminated on December 29, 1977. She

---

[1] Petitioner's daughter resides with Petitioner in Petitioner's own home. The home is mortgage free.

[2] The monthly grant for a one person assistance unit in Clearfield County is $141. An additional recipient in the unit raises the amount by $78 to $219. 55 Pa. Code §175.23(a).

reapplied for assistance in April, 1978, but her application was denied because she failed to apply for her husband's railroad retirement benefits. If Petitioner applies for and receives the railroad retirement benefits before she reaches age 60,[3] she will receive a lump sum payment of $12,034.17. She then will be ineligible for any further benefits, including medicare coverage, for the remainder of her life.[4] If she does not receive the railroad retirement benefits until she is age 60 or older, she will be eligible to receive $459.68 per month until her death. Petitioner asserts three points in arguing that DPW's order was in error. We find them to be without merit.

Petitioner first argues that DPW's ruling was contrary to the purpose of the public assistance program, that is

to promote the welfare and happiness of all the people of the Commonwealth, by providing public assistance to all of its needy and distressed; . . . and that assistance shall be administered in such a way and manner as to encourage self-respect, self-dependency and the desire to be a good citizen and useful to society.

Section 401 of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §401. *See also* 55 Pa. Code §101.1(c)(1). To the contrary, we find that DPW's order serves to further the purpose of the program.

First, we note that Petitioner fails to meet the definition of "needy" person which the program is de-

---

[3] Petitioner will become 60 years of age on April 19, 1980.

[4] Petitioner had worked outside the home for a short time over 30 years ago. She tried to return to work following her husband's death but was unable to do so. She accumulated few Social Security benefits in her own right and none through her husband since he was covered by the railroad retirement fund.

signed to assist. As Judge CRUMLISH, JR., wrote for this Court in *Houtz v. Department of Public Welfare* 42 Pa. Commonwealth Ct. 406, 409, 401 A.2d 388, 390 (1979):

> [T]he rules of statutory construction require that individual sections of a statute, including those which espouse the legislative intent, be construed with reference to the entire statute. . . . To determine the legislative intent, Section 401 must be read in conjunction with statutory provisions which define its terms. 'Need,' as used in Section 401, is defined, at least in part, by Section 432.5(c) of the Code. Viewed in this light, we find no conflict. The legislature intended Section 401 to provide aid to 'needy' persons; however, a person shall not be considered 'needy' to the extent that he has personal assets in excess of $250. (Citations and footnote omitted.)

Furthermore, the provisions of 55 Pa. Code §177.21(b) make clear that assistance is "intended to supplement, and not to replace, any available or continuing resources which an individual may have." "Resource" is defined in 55 Pa. Code §177.22 as

> That which a person has, *can resort to,* or make available for his partial or total support, or from which assistance may be recovered. Included in this definition are . . . income, or *money resources,* and personal and real property. Resources fall into two general classes, actual and potential. An actual resource is that which is immediately available to meet the current maintenance of an individual. It is a resource which is on hand, ready for use when it is needed. A potential resource is one which constitutes a possible future source of support for the person in need. (Emphasis added.)

Section 177.23(a)(1) of 55 Pa. Code states that in determining the eligibility of an individual for assistance, "all resources will be taken into consideration whether they are available to him for current maintenance, or whether they may become available to him." Finally, we note that 55 Pa. Code §177.23(a)(8)(iii) (A) provides that *all resources* must be considered in determining assistance eligibility unless the resource is *specifically exempted* from consideration. Railroad retirement benefits are *specifically included* in determining eligibility for assistance pursuant to 55 Pa. Code §177.23(a)(4).

We can appreciate Petitioner's argument that if she now is forced to accept railroad retirement benefits of $12,034.17 she may well be forced to become an assistance recipient in a short period of time, whereas if she were granted assistance until she were 60 she would then receive $459.68 monthly for the rest of her life and would be self-dependent and self-respecting. Unfortunately for Petitioner, the Code and regulations specifically prohibit that which she seeks. Furthermore, neither this Court nor DPW may enter into speculation as to what may happen to Petitioner in the future. Indeed, it is perhaps just as likely that other resources may become available to her making future assistance unnecessary as it is that she will become destitute and require assistance. The general assistance program is not one of unlimited funds. Those funds must be distributed according to the directives of the Code and regulations to insure that the intent of the program is met for the maximum number of applicants. Despite the appealing nature of Petitioner's argument, we must reject it.

Petitioner next argues that DPW's order violates the provisions of 55 Pa. Code §181.63(a)(1)(iii). That section and Section 432.5(c)(3) of the Code, added by Section 5 of the Act of July 9, 1976, P.L. 993, 62 P.S.

§432.5(c)(3), provide that "[e]quipment and material which are necessary to implement employment, rehabilitation, or self care plan for the applicant or recipient" are not to be considered resources available to assistance applicants. There is no support for Petitioner's argument that the monthly railroad retirement benefits she could receive at age 60 constitute a "self care plan." Again, as Judge CRUMLISH, JR., wrote in *Houtz v. Department of Public Welfare* at 410, 401 A.2d at 391,

> Statutory language which is clear and unambiguous must be given its obvious meaning, the letter of the statute may not be disregarded under the pretext of pursuing its spirit. . . . Accordingly, Section 432.5(c)(3) [and the identical language of 55 Pa. Code §181.63(a)(1)(iii)] *will not be extended to include cash reserves,*
> . . . . (Citations omitted; emphasis added.)

Finally, Petitioner argues that DPW's order violates the provisions of 55 Pa. Code §177.23(b)(1). Petitioner's argument ignores the clear wording of the regulation. That Section provides that

> A person who disposes of real or personal property having a value of $500 or more *without fair consideration* within two years immediately preceding the date of application for assistance, will be ineligible to receive assistance if he disposed of such property *with the intention of defrauding the Commonwealth.* (Emphasis added.)

Section 177.23(b)(1)(i)(A) defines fair consideration as the "approximate net market value" of the property at the time of transfer. The value of Petitioner's railroad retirement benefits before she reaches age 60 is $12,034.17. That is precisely the sum she will receive if she elects to take the benefits now, and, therefore, the fair consideration standard will be met. Sec-

tion 177.23(b)(1) defines "intention of defrauding the Commonwealth" in part as meaning "the voluntary and purposeful act of transferring property in an attempt to qualify for a cash grant." Clearly, if Petitioner chooses to receive the railroad retirement benefits before age 60 she will not be doing so in an attempt to qualify for a cash grant but rather because she cannot qualify for one and requires the funds to support herself. Such a reason does not constitute "defrauding the Commonwealth" and will not preclude her from receiving assistance in the future should she meet the other eligibility requirements.

For the foregoing reasons, DPW's order is affirmed.

ORDER

AND Now, this 6th day of March, 1980, the Order of the Department of Public Welfare at No. 36924-D, dated October 13, 1978, is affirmed.

President Judge BOWMAN did not participate in the decision in this case.

Judge DISALLE did not participate in the decision in this case.