**ESTATE OF Lorene M WYINEGAR, Deceased.**

**Appeal of ESTATE OF Lorene M. WYINEGAR.**

Superior Court of Pennsylvania.

Argued Jan. 27, 1998.

Filed April 17, 1998.

Robert Glessner, York, for appellant.

Amy L. Nelson, York, for participating party.

Before CAVANAUGH, EAKIN and STEVENS, JJ.

CAVANAUGH, Judge:

The Estate of Lorene M. Wyinegar appeals from the order entered on April 10, 1997, by the Court of Common Pleas of York County which allowed Vallie H. Wynegar, the guardian of the person and estate of Robert P. Wyinegar, an incapacitated person, to elect against the Will of Robert's deceased wife, Lorene M. Wyinegar.[1]  We affirm.

The facts of this matter as supported by the record are as follows: Lorene M. Wyinegar and Robert P. Wyinegar were married to each other.  In 1994, in preparation for admitting Robert into a nursing home, Robert and Lorene met with a Department of Welfare worker.  As a product of that meeting, Robert transferred property consisting of a farm, which had been acquired prior to his marriage to Lorene, into Lorene's name alone.  As a result of the transfer, Robert qualified for medical assistance and was admitted into institutionalized care.  Thereafter, on September 3, 1996, Lorene died, survived by Robert.  On September 18, 1996, Lorene's Last Will and Testament dated November 17, 1995, was probated in the Office of the Register of Wills of York County, and Letters Testamentary were granted unto Shirley Jones.  Ms. Jones is the daughter of Lorene and the step-daughter of Robert.  She is also the Executrix of her mother's Will.

In Lorene's Will, she left the entirety of her estate to her six children, none of whom are the children of Robert.  There was no provision in the said Will for Robert.  The exact date of the marriage was not established, but the trial court took judicial notice of the incapacity hearing for Robert, captioned at No. 67–96–1140.  In that hearing, Petitioner's Exhibit No. 1 was the Deed from Robert to Lorene bearing the date of August 4, 1994, and signed by Lorene M. Wyinegar "as wife of Robert P. Wyinegar."  Therefore, the trial court determined that the execution of the Will occurred after the marriage of Robert and Lorene.

At the conclusion of the incapacity hearing, which was held on January 17, 1997, the trial court adjudicated Robert to be an incapacitated person and appointed Vallie H. Wynegar as plenary guardian both of his person and of his estate.  On March 17, 1997, the trial court entered an Order extending the time for the guardian to make an election to take against the Will if permitted by the Court.

Vallie H. Wynegar filed a Petition on February 7, 1997, asking for leave of Court to elect on behalf of Robert P. Wyinegar to take against the provisions of the Will of Lorene M. Wyinegar.  An Answer and New Matter was filed by the Executrix of the Will on February 24, 1997.  Thereafter, a hearing was held on March 5, 1997.  At the conclusion of the hearing, the trial court took the matter under advisement.

On March 17, 1997, the trial court entered an Order extending the time for filing an election until not later than ten days after the Court ruled on the Petition for leave to elect, but in no event later than April 18, 1997.  On March 24, 1997, the trial court issued an order granting permission to Vallie to elect against the Will of Lorene on behalf of his incapacitated brother.  The election was filed on March 27, 1997, however, it was subsequently discovered that the order of March 24, 1997, had not been entered into the docket.  Thereafter, on April 10, 1997, the Court issued a second Order and an

---

1.  Vallie Wynegar and Robert Wyinegar are brothers, despite the different spellings of their last names.

Opinion granting permission to Vallie to elect against the estate of Lorene. A second election was filed on April 15, 1997.

Shirley F. Jones, the Executrix of the estate, appeals the trial court's Order of April 10, 1997, raising the following issues for our review:

I. Where the Department of Welfare approves an allocation of resources between a man and his wife at the time a man is institutionalized, they split their assets accordingly, and wife predeceases him, are the assets in her estate "deemed available to him" such that he must elect against her will in order to remain qualified for medical assistance?

II. Whether the Court erred as a matter of law in looking to the interests of the Commonwealth rather than to the interests of the incompetent spouse in determining a petition to elect against a will?

III. Whether a plaintiff meets its burden of proof in seeking to elect against the will where the plaintiff fails to prove the existence of any assets in the estate of the decedent?

IV. Whether the Court erred in allowing the incompetent to elect to take against the will of his deceased spouse when such election will defeat her testamentary dispositions resulting in assets from her estate going to strangers upon the death of the incompetent?

Appellant's Brief at 3.

Our standard of review from a final order of the Orphans' Court Division requires that we accord the findings of an Orphans' Court, sitting without a jury, the same weight and effect as the verdict of a jury; we will not disturb those findings absent manifest error; as an appellate court we can modify an Orphans' Court decree only if the findings upon which the decree rests are not supported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence.

*In re Benson,* 419 Pa.Super. 582, 615 A.2d 792, 793 (1992) (citations omitted).

The law of Pennsylvania provides that a surviving spouse of a decedent residing in this Commonwealth has a right to an elective share of the deceased spouse's estate. 20 Pa.C.S.A. § 2203. While this right can be waived or forfeited by the surviving spouse, in this case, there has been no allegation that Robert waived or forfeited his right to the elective share. 20 Pa.C.S.A. § 2207, 2208. 20 Pa.C.S.A. § 2206 provides that

> in the case of an incapacitated spouse, the right of election may be exercised in whole or in part ... by the spouse's guardian ... provided, that ... the election [is] exercised ... upon order of the court having jurisdiction of the incapacitated person's estate, after finding that exercise of the right is advisable.

Appellant first contends that the trial court erred in allowing Vallie to elect against Lorene's Will on behalf of Robert, because to do so would be contrary to Robert's best interest. Appellant's argument is that the elective share received from the estate would increase Robert's assets to a sum which would negatively impact upon his welfare by disqualifying him from receiving further medical assistance. Appellant also argues that because the transfer of Robert's real estate to Lorene, (which constitutes a substantial portion of Lorene's estate), was made under the direction and with the approval of the Department of Welfare, if the election was disallowed, the Department of Welfare would not consider this asset available to Robert for purposes of computing his eligibility for medical assistance.[2] We disagree for the following reasons.

The Commonwealth Court has held that the Department of Welfare is proper to deny benefits to a surviving spouse who has refused to obtain an available resource. *Armlovich v. Department of Welfare,* 49 Pa. Commw. 603, 411 A.2d 893 (1980) (Department of Welfare acted properly in denying

**2.** The notes of testimony reveal that Robert receives Social Security benefits and a small pension. Vallie testified that, with the exception of an allowance of $30.00 per month, all of Robert's income is used to pay for the cost of his nursing home. The balance of Robert's costs are provided by medical assistance.

benefits to the surviving spouse who had refused to obtain Railroad Retirement Benefits for which she was eligible). The court in *Armlovich* noted that the state regulations for the Department of Welfare require that individuals who apply for assistance obtain all resources to which they are entitled. Failure to do so renders the individual ineligible for benefits. The court further noted that the regulations make it clear that assistance is "intended to supplement, and not to replace, any available or continuing resources which an individual may have." *Armlovich*, 49 Pa.Commw. at 606, 411 A.2d at 895 (quoting 55 Pa.Code 177.21(b) (amended 1989)).[3]

The Clinton County Court of Common Pleas used the same reasoning in *In re: Estate of Benjamin J. Lutz*, 24 D. & C.3d 181 (1982). The facts of that case were similar to the one at bar. The incapacitated person, Mary Lutz, was a nursing home resident. The court granted approval to Mrs. Lutz's guardian to elect against her deceased spouse's estate even though she was entitled to some joint assets and was receiving medical assistance benefits which paid for her care at the nursing home.

> The Court noted that the Department of Welfare requires individuals seeking medical assistance benefits to pursue claims for property in which the individual has or could have an interest. In addition, the Court specifically rejected the arguments, much like the ones made by the Executrix in the case *sub judice*, that
>
>> the court's approval of the election simply means that additional assets will be available for the payment of her nursing home fees whereas if these funds were not made available, the Commonwealth would become obligated to make these payments.
>>
>> . . . .
>>
>> denying the election would . . . [result in] having more assets available for distribution to [the parties'] common heirs.

The Court held that the executor's position "inescapably assumes the premise that these private legatees should benefit at public expense."

Finally, the *Lutz* Court noted that if Mrs. Lutz were competent, she would have no choice but to elect against her husband's estate in order to continue receiving medical assistance benefits. The Court rhetorically asked "Should the fact that she is incompetent insulate her from this requirement?" Clearly, the Court found that it should not.

Trial Court Opinion at 4–5 (quoting *Lutz*, 24 D. & C.3d at 185.)

■ Again, while we note that the Department of Welfare regulations have been amended subsequent to the *Lutz* decision, we find the *Lutz* court's reasoning to be sound and entirely consistent with the current regulations which require

> [a]n applicant/recipient [to] take reasonable steps to obtain and make available resources to which he is, or may be, entitled unless he can show good cause for not doing so.

55 Pa.Code § 178.1(g). Therefore, clearly, the election is in Robert's best interest. Failure to take the election against Lorene's Will could potentially compromise Robert's entitlement to continued medical assistance in addition to denying him the benefit of the elective share.

■ Further, we are unconvinced by appellant's argument that because Robert's assets were transferred to Lorene under the direction and with the approval of the Department of Welfare, they are no longer available resources to which he is, or may be, entitled to pursuant to the Department of Welfare regulations. The transfer was made in order to qualify Robert for medical assistance upon his entry into institutionalized care as well as to provide for the needs of Lorene, the "community spouse".[4] The Department of Welfare permits "community

---

**3.** Although the Department of Welfare regulations have been amended since *Armlovich* was decided, and the above quoted language no longer appears in the current regulations, we find that it is not inconsistent with the amended code and continues to be valid.

**4.** "Community spouses" are spouses of institutionalized individuals who are not themselves institutionalized, but who are living in the community.

spouses" to keep a portion of the couple's assets while permitting the institutionalized spouse to qualify for medical assistance. The purpose of such an allowance clearly is to protect certain assets in order to provide for the basic needs of the community spouse, thus preventing the community spouse from becoming impoverished by the cost of caring for the institutionalized spouse.

> Appellee argues and we agree that
>
> once these goals have been met, and the community spouse has predeceased the institutionalized spouse, then there is no reason not to use those assets for the obligations, needs and desires of the institutionalized spouse. Thus, while it is true that resources transferred to the community spouse are not counted in determining continuing Medical Assistance eligibility during the community spouse's life, there is no reason not to count them after the community spouse's death.

Appellee's Brief at 14.

▆▆▆ Next, appellant contends that the trial court erred as a matter of law when it looked to the interests of the Commonwealth and to public policy to decide whether Vallie should be allowed to exercise the spousal election on behalf of his brother. The guardian of an incompetent spouse may not elect on behalf of the incompetent to take against the Will of the incompetent's deceased spouse unless empowered to do so by the court. In deciding this issue, the court must consider the matter from the point of view of what is in the best interest of the incompetent under the circumstances. *Brooke's Estate*, 279 Pa. 341, 123 A. 786 (1924). In this case, the trial court stated the following in its opinion:

> [20 Pa.C.S.A. § ] 2206 provides that the right of election of a surviving incompetent spouse may be exercised in whole or in part by his guardian only upon Order of Court after a finding that the exercise of the right is advisable. We must therefore determine whether the exercise of the election to take the spousal share on behalf of the incapacitated spouse is advisable; by that we are satisfied that it must be in his

best interests and not against any public policy.

Trial Court Opinion at 2. A careful review of the trial court's opinion shows that the trial court applied the appropriate standard to the facts before it. Additionally, a determination of the public policy issue was of absolute necessity to fully analyze the impact that denying the election would have on Robert's welfare, as a refusal to allow the election could jeopardize his right to further medical assistance upon Department of Welfare review.

In appellant's third argument, it is asserted that the trial court's decision was against the weight of the evidence as it permitted Robert to elect against the Will of his spouse where there was no proof that Lorene's estate is solvent or has any assets.

> It is well settled that "a new trial will not be granted on the basis of a weight of the evidence claim unless evidence supporting the verdict is so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice."

*Sheely v. Beard,* 696 A.2d 214, 219 (Pa.Super.1997) (quoting *Brindley v. Woodland Village Restaurant,* 438 Pa.Super. 385, 652 A.2d 865, 872 (1995)).

▆▆▆ While no inventory had yet been filed in Lorene's estate at the time of the hearing, the trial court properly found there to have been sufficient evidence of the estate's assets in the Petition for the grant of Letters which lists, as the most substantial part of the estate, the real estate which was previously owned by Robert. Because we find the evidence supporting the verdict is not so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to this court's sense of justice, we find no merit in appellant's contention.[5]

▆▆▆ Finally, appellant argues that the trial court erred as a matter of law in disregarding Lorene's last wishes for the disposi-

---

5. We further note that in violation to Pa.R.A.P. 2119(b), appellant has failed to provide this court with any caselaw or statutory law to support his assertion.

tion of her property expressed in her Will. The very statute which permits an election against a Will presupposes that this will result in some assets passing to beneficiaries other than those intended by the decedent. 20 Pa.C.S.A. § 2203. In the absence of such a statute, spouses would be able to disinherit their husbands or wives with impunity. Because the first and primary consideration in determining whether the guardian of an incapacitated person may elect against the Will is the welfare of the incapacitated person, and because we have found that the trial court properly determined that it is in Robert's best interest to allow Vallie to make the spousal election on Robert's behalf, we find no merit to appellant's final contention.

Accordingly, the trial court's order is affirmed.