Josephine PERNA, by the Guardian of her Estate and Person, Virginia BEKUS, Petitioner,

v.

DEPARTMENT OF PUBLIC WELFARE and Northampton County Assistance Office, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 21, 2002.

Decided Aug. 22, 2002.

Reargument En Banc Denied Oct. 16, 2002.

Eric P. Wilenzik, Blue Bell, for petitioner.

Cynthia A. Fillman, Harrisburg, for respondents.

BEFORE McGINLEY, Judge, LEAVITT, Judge and DOYLE, Senior Judge.

OPINION BY Judge McGINLEY.

Josephine Perna (Mrs. Perna), by her daughter and guardian Virginia Bekus, petitions for review from a final order on the merits by the Secretary of the Department of Public Welfare (DPW) that upheld the order of the DPW Bureau of Hearings and Appeals (BHA) that affirmed the denial of Mrs. Perna's appeal.

By advance notice dated June 18, 1997, the Northampton County Assistance Office (CAO) discontinued medical assistance (MA),[1] nursing home care benefits as of July 1, 1997.[2] The CAO later rescinded

---

1. In *Ptashkin v. Department of Public Welfare*, 731 A.2d 238, 240–241 (Pa.Cmwlth.1999), this Court stated:

   'The Medicaid program was established in 1965 in Title XIX of the Social Security Act [42 U.S.C. §§ 1396–1396r] to provide federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons.' *Oriolo [v. Department of Public Welfare]*, 705 A.2d [519] at 520. Coverage may be provided for those described as the 'medically needy,' whose income and resources are insufficient to meet necessary medical costs. 42 U.S.C. § 1396A(a)(10)(c).... DPW, however, is the payer of last resort. 55 Pa.Code § 178.6(a). It is incumbent upon an applicant to use his or her own resources, until they are reduced to $2400, prior to applying for MA.

2. The CAO noted the failure to report the residence owned by the couple and the death of Mrs. Perna's husband, Michael Perna.

said advance notice and reinstated benefits. Pursuant to a December 19, 1997, notice to Mrs. Perna, the CAO "determined that the failure of you or your representative to elect against the will of your husband constitutes a transfer without fair consideration in order to qualify for medicaid in an amount equal to 1/3 of the Augmented Estate Value. . . . [W]e are proposing to stop nursing care payment effective 1/1/98." Addendum to PA 162A Notice sent to Josephine Perna 12/19/97; Reproduced Record (R.R.) at 21.

After hearing, the BHA denied Mrs. Perna's appeal. As noted in the BHA's final administrative action order of September 30, 1998, the BHA affirmed the hearing official's decision. In May 2000, reconsideration was granted and the record reopened.

The BHA made the following pertinent findings of fact:

1. On or about December 03, 1993, the Appellant, Josephine Perna was admitted to the Leader Nursing Home, currently called the Manor Care Nursing Home.

2. On February 04, 1994, the CAO authorized Medical Assistance Benefits, category PA, for the Appellant Josephine Perna.

3. On April 03, 1997, the Appellant's husband, Michael Perna, passed away.

4. On December 19, 1997, the CAO issued a notice proposing to discontinue Medical Assistance Nursing Home Care Benefits, due to the Appellant's alleged failure to elect against the will/estate of her husband.

5. In response to the notice proposing to discontinue Medical Assistance Nursing Home Care Benefits, the Appellant's legal guardian filed an appeal on December 23, 1997, which was received by the Bureau of Hearings and Appeals on January 2, 1998.

6. The Hearing Officer notes for the record that the Appellant, Josephine Perna was residing in Pennsylvania and Michael Perna, her husband was a resident of New Jersey at the time of his death.

7. The Hearing Officer notes for the record that Mrs. Josephine Perna continued to send support payments to her husband up until the time of his death.

8. At the time of the fair hearing in this matter, the Hearing Officer notes for the record that there was no evidence provided indicating that the Pernas separation was due to anything other than medical.

Adjudication, Findings of Fact (F.F.) Nos. 1–8 at 3–4; R.R. at 7–8.

As of March 19, 2001, the BHA issued an order denying Mrs. Perna's appeal and a final administrative action order affirming the hearing official's decision. After reconsideration, DPW upheld BHA's decision and issued a final order on the merits dated September 6, 2001. Thereafter, Mrs. Perna petitioned for review with this Court.

■■■ The issues presented for our review [3] are: 1) whether DPW acted in contravention of New Jersey law and in violation of Mrs. Perna's constitutional rights by holding that she should have elected against her husband's will, and 2) whether

---

**3.** This Court's review of an adjudication by DPW is limited to whether an error of law was committed, whether findings of fact were supported by the evidence, or whether constitutional rights were violated. *Geriatric & Medical Services, Inc. v. Department of Public* *Welfare,* 151 Pa.Cmwlth. 209, 616 A.2d 746 (1992). "The hearing examiner is the ultimate factfinder in these matters, and must resolve conflicts in testimony and may reject the testimony of any witness." *Id.* at 747 (citations omitted).

DPW erred in its determination that the election was a resource subject to transfer under the Pennsylvania Code.

■ First, Mrs. Perna contends that New Jersey law prohibited her from electing against the will of her deceased husband.[4] Based on a strict reading of the New Jersey statute, Mrs. Perna asserts that she and her husband lived "separate and apart" in different states and the circumstances gave rise to a divorce action under New Jersey law.[5]

Nevertheless, there was no evidence introduced to show that the Pernas experienced any marital problems. Mrs. Perna and her husband were unable to live together because she required nursing home care. *See* Adjudication, F.F. No. 8 at 4; R.R. at 8. In addition, the record reveals Mrs. Perna financially supported her husband while she was in the nursing facility. Certification of Payment of Income to Community Spouse, February 7, 1994; R.R. at 92.

Moreover, Section 178.1(g) of the Pennsylvania Code provides that "[a]n applicant/recipient shall take reasonable steps to obtain and make available resources to which he is, or may be, entitled unless he can show good cause for not doing so." 55 Pa.Code § 178.1(g). Mrs. Perna's argument is unpersuasive that she was prevented by costs from pursuing the election against the will.

It has been established that the failure to take the election jeopardizes entitlement to ongoing MA. *Estate of Wyinegar*, 711 A.2d 492 (Pa.Super.1998). In particular, our Pennsylvania Superior Court held that the election was within a spouse's best interests if the other spouse's assets were "available resources" when evaluating MA eligibility. *Id.*

Here, this Court concludes that DPW properly discontinued Mrs. Perna's benefits because she failed to pursue an available resource through her refusal to elect against the will of her deceased husband.

■ Next, Mrs. Perna maintains that DPW's position towards the election against the will represents a deprivation of her MA benefits and a violation of due process rights under the Fourteenth Amendment of the United States Constitution. Mrs. Perna's objective is to preserve her fundamental property right in continued MA benefits.

However, this Court has observed:

Although there is no constitutional right to receive public assistance ... a person who is medically needy is statutorily eligible for MA. This Court has recognized our legislature's legitimate interest in allocating undeniably scarce social welfare resources to those considered most needy.... The burden of proving eligibility for assistance rests with the appli-

---

4. Under New Jersey law governing the surviving spouse's right to an elective share, Section 3B:8–1 provides:

    If a married person dies domiciled in this State, on or after May 28, 1980, the surviving spouse has a right of election to take an elective share of one-third of the augmented estate under the limitations and conditions hereinafter stated, provided that at the time of death the decedent and the surviving spouse had *not* been living separate and apart in different habitations or had *not* ceased to cohabit as man and wife, either as

the result of judgment of divorce from bed and board or under circumstances which would have given rise to a cause of action for divorce or nullity of marriage to a decedent prior to his death under the laws of this State. (Emphasis added.)
N.J. Stat. Ann. § 3B:8–1 (2001).

5. Pursuant to Section 2A:34–2(d), divorce is caused by separation for at least eighteen months with no prospect of reconciliation. N.J. Stat. Ann. § 2A:34–2(d) (2001).

cant.... (Citations and footnote omitted).

*Ptashkin,* 731 A.2d at 241–242 *quoting Stanley v. Department of Public Welfare,* 112 Pa.Cmwlth. 157, 535 A.2d 674, 677 (1987).

Here, the record indicates Mrs. Perna did not substantiate her eligibility for assistance. Mrs. Perna's argument is meritless that DPW infringed upon her constitutional rights.

■ Second, Mrs. Perna submits that DPW regulations do not support its position that the election against an estate qualifies as a resource subject to transfer. According to Mrs. Perna, an election against an estate does not technically meet the definition of "resource," i.e. "[r]eal or personal property which a person has or can make available for partial or total support,...." 55 Pa.Code § 178.2.

A resource is available for purposes of determining eligibility for assistance if proof of ownership exists together with the right to dispose of the resource. *See* 55 Pa.Code § 178.4. In order to prevent an applicant from improperly disposing of otherwise available assets to qualify for assistance, certain transfers of assets affect eligibility. DPW regulations provide a "look-back" period of thirty-six months from the date an applicant is both institutionalized and has applied for MA. 55 Pa. Code § 178.104(c). If an applicant disposes of assets for less than fair market value during the "look-back" period, DPW presumes that the transfer was made to qualify for assistance. The applicant may rebut the presumption by establishing that the individual intended to dispose of the assets for fair market value, the assets were transferred exclusively for a purpose other than to qualify for assistance, or the assets transferred for less than fair market value were returned to the applicant. 55 Pa. Code § 178.104(d)(3). If the applicant does not rebut the presumption, the applicant is ineligible for assistance for a period equal to the total value of all assets transferred divided by the average monthly cost to a private nursing home patient at the time of the application. 55 Pa.Code § 178.104(d).

Here, Mrs. Perna did not attempt to rebut the presumption. She did not present evidence that the purpose of the transfer was for any reason other than qualifying for MA. It is important to keep in mind that "federal law does not prohibit a state from rejecting a MA application if it suspects that *available assets are being sheltered* in contravention of the Medicaid law or its aims or purposes. In fact, it is the state's duty to perform this task. 42 U.S.C. § 1396(a)." *Ptashkin,* 731 A.2d at 246 (emphasis added).

In the present controversy, DPW properly construed Mrs. Perna's failure to attempt an election as a transfer lacking consideration. In sum, DPW correctly stopped Mrs. Perna's MA where she transferred a resource without fair consideration.[6]

Accordingly, we affirm.

### ORDER

AND NOW, this 22nd day of August, 2002, the order of the Pennsylvania Department of Public Welfare in the above-captioned matter is affirmed.

---

**6.** In light of the outcome of the first two issues, we need not address Mrs. Perna's final issue regarding her requested reimbursement of fees and costs in this matter.