J-A24037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF TERRI GARBUTT, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JACOB ENDERES | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 616 EDA 2022 |

Appeal from the Order Entered January 31, 2022
In the Court of Common Pleas of Chester County Orphans' Court Division
at No(s):  1519-2354

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED FEBRUARY 27, 2023**

Jacob Enderes ("Enderes"), Executor of the Estate of Terri Garbutt, Deceased ("the Estate"), appeals from the order denying his petition to strike the spousal election filed by the guardians of the decedent's surviving spouse, Herbert Grant Garbutt, Jr. ("Mr. Garbutt").  We affirm.

The orphans' court summarized the relevant factual and procedural history as follows:

> . . . Terri Garbutt [("Decedent")] died testate on October 13, 2019.  [In her will, Decedent designated her brother, Enderes, as her sole beneficiary.]  On November 25, 2019[,] letters testamentary were awarded to [Enderes] to administer [the] Estate. . . .  [Mr. Garbutt] . . . was declared incapacitated [in] 2016 . . ..  Decedent had served as Mr. Garbutt's guardian until her date of death, upon which time Glenn Garbutt and Joan Garbutt were appointed as emergency co-guardians of Mr. Garbutt's estate and person.
>
> On December 19, 2019, the co-guardian[s'] counsel[, John F. McKenna, Esquire,] sent an e-mail to then[-]counsel for the

Estate . . . , one Jim Ruggiero, Esq., advising [him] that [Mr. Garbutt] would be claiming his elective share of [the] Estate once approval from the court was obtained and a special needs trust established. On January 20, 2020, . . . [Attorney] McKenna, sent an e-mail to Douglas Kaune, Esq., the new attorney handling the Estate . . . , informing [Attorney] Kaune that there was a supplemental needs trust created for the surviving spouse that did not qualify for the Medicaid exclusion and that the co-guardian[s] needed to find out what assets were available for the transfer to the special needs trust. On January 23, 2020, [Attorney] McKenna sent [Attorney] Kaune another e-mail letting him know that Glenn and Joan Garbutt were appointed co-guardians of [Mr. Garbutt's] person and estate, that they needed certain account information in order to be able to pay [Mr. Garbutt's] residential service provider, and seeking the value of . . . Decedent's probate assets in order to determine with certainty that the co-guardians would seek to elect against the will on [Mr. Garbutt's] behalf. . . . .

On February 20, 2020, [Attorney] McKenna filed with the orphans' court a petition for approval of [a] special needs trust. This petition represented to the court and the respondent that [Enderes] was still identifying the Estate's assets and obtaining the date of death valuations.

The [orphans'] court approved the creation of a special needs trust on March 11, 2020. However, the co-guardians still needed the approval of the Pennsylvania Department of Human Services [("DHS")], which was pending. On March 11, 2020, [Attorney] McKenna e-mailed [Attorney] Kaune[,] advising him of the court order and that once the approval of the special needs trust was received from the Pennsylvania [DHS], the co-guardians would be filing an election on behalf of [Mr. Garbutt] to take against Decedent's will.

A series of further e-mails between the parties in a vein similar to that discussed above were exchanged over the ensuing months, including one sent on May 12, 2020[,] after the Estate's attorney had provided to [Attorney] McKenna a spreadsheet with the probate assets, expenses and income set forth, in which [Attorney] McKenna advised that the co-guardians intended to transfer the funds in the supplemental needs trust to the special needs trust and asked that, as co-guardian Glenn Garbutt was the alternative trustee for the supplemental needs trust, that

- 2 -

petitioner would renounce his trusteeship with regard to same. These e-mails continued until the [spousal] election was filed [by Attorney McKenna] on June 15, 2020.

Between the date of probate and the filing of the [spousal] election, the Covid-19 pandemic struck and shut down all but the most essential services in the Commonwealth. [On March 18, 2020, the Pennsylvania Supreme Court issued an emergency order in response to the Covid-19 pandemic which, among other things, ordered the statewide closure of all courts to the public and the suspension of all filing deadlines. The statewide judicial emergency and suspension of filing deadlines was extended to and ended on June 1, 2020. *See In re General Statewide Judicial Emergency*, 229 A.3d 229 (Pa. 2020); *In re General Statewide Judicial Emergency*, 230 A.3d 1015 (Pa. 2020); *In re General Statewide Judicial Emergency*, 234 A.3d 408 (Pa. 2020)]. [Attorney] McKenna's law offices closed; they had no staff to type or to file documents [until his law firm partially reopened in early June 2020]. The [orphans'] court was largely shut down for all but the most essential functions.

As . . . stated above, [Attorney] McKenna filed the spousal election on June 15, 2020. Eleven (11) months later, [Enderes] filed his petition to strike the election. [The orphans' court] held an evidentiary hearing on October 21, 2021. At the hearing, [Enderes] withdrew all of his challenges to the election except for the challenge to its timeliness. On January 28, 2022, [the orphans' court] issued an order denying [Enderes's] petition, finding that the unprecedented conditions imposed by the Covid-19 pandemic warranted equitable tolling of the filing deadline, particularly where no harm to the Estate occurred, as all parties were aware throughout all of the stages of the litigation that the co-guardians of the incapacitated surviving spouse intended to file an election to take against the Decedent's will.

Orphans' Court Opinion, 4/12/22, at 1-4 (unnecessary capitalization omitted, paragraphs reordered and reformatted for clarity).

Enderes filed a timely notice of appeal and both he and the orphans' court complied with Pa.R.A.P. 1925.

Enderes raises the following issue for our review:

- 3 -

Whether the orphans' court erred, abused its discretion, and issued a decision unsupported by the evidence in holding that the six-month limitation period of 20 Pa.C.S.A. § 2210(b) applicable to the spousal election was equitably tolled by the Covid-19 pandemic and that gross injustice would result without such tolling?

Enderes's Brief at 8 (unnecessary capitalization omitted).

Our standard of review of the findings of an orphans' court is as follows:

When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

*In re Estate of Harrison*, 745 A.2d 676, 678-79 (Pa. Super. 2000) (internal citations, quotation marks, and unnecessary capitalization omitted). An orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law. *See In re Estate of Luongo*, 823 A.2d 942, 951 (Pa. Super. 2003).

Pennsylvania's Probate, Estates, and Fiduciaries ("PEF") Code provides that a surviving spouse of a decedent residing in this Commonwealth has a right to forego their inheritance, as defined by the decedent's will, and chose instead to take against the will and in favor of an "elective share" of the deceased spouse's estate (a one-third allotment of enumerated categories of the deceased spouse's property). *See* 20 Pa.C.S.A. § 2210; *see also In re*

***Estate of Jabbour***, 276 A.3d 1180, 1191 (Pa. 2022).[1]  In the case of an incapacitated surviving spouse, the right of election may be exercised in whole or in part by the spouse's guardian, provided that the election is exercised upon order of the court having jurisdiction of the incapacitated person's estate after finding that exercise of the right is advisable.  ***See*** 20 Pa.C.S.A. § 2206; ***see also In re Estate of Wyinegar***, 711 A.2d 492, 494, 496 (Pa. Super. 1998) (explaining that the guardian of an incompetent surviving spouse may not elect on behalf of the incompetent to take against the will of the incompetent's deceased spouse unless empowered to do so by the court).

Pursuant to the PEF Code, when a surviving spouse elects to take or not to take his or her elective share of the decedent's estate:

> ***(b) Time Limit.*** — The election must be filed with the clerk before the expiration of six months after the decedent's death or before the expiration of six months after the date of probate, whichever is later.  ***The court may extend the time for election for such period and upon such terms and conditions as the court shall deem proper under the circumstances on application of the surviving spouse filed with the clerk within the foregoing time limit.***  Failure to file an election in the manner and within the time limit set forth in this section shall be deemed a waiver of the right of election.

---

[1] Unlike a testate share, which only accounts for property passing under a will, the elective share includes certain non-probate assets so as to prevent one spouse from depriving the other of what the legislature has determined to be a reasonable share by, for example, naming one's spouse as the sole testate beneficiary while placing all of one's assets in accounts that transfer upon death to a beneficiary other than the surviving spouse.  ***See Jabbour***, 276 A.3d at 1182-83.

20 Pa.C.S.A. § 2210(b) (emphasis added); *see also Jabbour*, 276 A.3d at 1191 (holding section 2210(b) applies equally to both spousal elections to take and not to take the elective share).

Notwithstanding the time limitation provided by section 2210(b), our Supreme Court has recognized that strict enforcement of the statutory period may be waived under certain circumstances. *See Jabbour*, 276 A.3d, at 1192 n.18 (explaining that fraud and duress are "situations that the PEF does not address which come with time-honored common-law protections that the legislature has never repudiated or disturbed"); *see also In re McCutcheon's Estate*, 128 A. 843, 845 (Pa. 1925) (holding that the statutory requirements may be waived "due to agreements between those interested, or resulting from amicable negotiations to this end, the intention of the survivor being known to all . . ..").

Consistent with these considerations, the comment to section 2210 provides that *"[s]ubsection (b) sets forth the rules generally followed by the Pennsylvania courts in the ordinary cases but gives the court power to supplement and to depart from them to avoid inequities*." *Id*. Cmt. (emphasis added). Additionally, the commission comment to section 2210(b) states:

> This section continues present Pennsylvania law except that the time limit for filing an election in Section 2210(b) is now six months after the decedent's death or six months after the date of probate, whichever is later. *This period may be waived by the court if "gross injustice would result."*

4 Remick's Pennsylvania Orphans' Court Practice § 31.18 (emphasis added).[2]

Enderes asserts that, pursuant to section 2210(b), a timely spousal election had to be filed on or before May 25, 2020, which is six months after the November 25, 2019 date of probate. According to Enderes, the statutory time requirement to elect to take against the will, as set forth in section 2210(b), is mandatory and cannot be extended absent proof that the surviving spouse has been induced to delay the election by fraud. Enderes contends that no application was made to the orphans' court to extend the time limit for making the spousal election. Enderes claims that, because the spousal election was not filed until June 15, 2020, it is deemed waived under section 2210(b).

Enderes asserts that the cases relied on by the orphans' court in denying his petition to strike the spousal election are factually and legally distinguishable.[3] Enderes does not dispute the seriousness of the risk that, if

---

[2] The Statutory Construction Act provides that the comments of a commission which drafted a statute may be consulted in the construction of the application of the original provisions of the statute, but the text of the statute shall control in the event of a conflict between the text and such comments. **See** 1 Pa.C.S.A. § 1939; **see also Indian Rocks Prop. Owners Ass'n v. Glatfelter**, 28 A.3d 1261, 1272 (Pa. 2011) (holding that reports and comments available to the General Assembly at the time of final passage of a statute may be used to construe the statutory provision).

[3] Enderes points out that several of the cases relied upon by the trial court involve predecessor versions of section 2210. Initially, we observe that some of the cases relied upon by Enderes also involve a predecessor statute. Nevertheless, our Supreme Court has, itself, relied upon cases involving
*(Footnote Continued Next Page)*

Mr. Garbutt is not permitted to elect against the will, he may lose his eligibility for benefits from the Department of Public Welfare ("DPW"). Enderes further acknowledges that this "matter solely concerned counsel for the [co-g]uardians failure to timely file an election against the will." Enderes's Brief at 40. However, Enderes maintains that equitable tolling of the statutory period is untenable because there was no allegation of fraud, duress, or misconduct that would justify such tolling or the late filing of the spousal election. Enderes points out that while the orphans' court acknowledges that the Covid-19 global pandemic may have hindered or impeded the timely filing by Attorney McKenna of the spousal election, the court did not find that the pandemic prevented the filing of the spousal election in a timely fashion.

The orphans' court considered Enderes's issue and determined that it lacked merit. The orphans' court explained:

> In the matter *sub judice*, it is beyond peradventure that all parties to the administration of . . . Decedent's Estate were well[-]aware of [Mr. Garbutt's] intent to take his elective share against [Decedent's] will. Discussions about the assets available to him for this purpose continued throughout the process into May of 2020. All parties were operating on the belief that [Mr. Garbutt] would exercise his right to elect to take against his deceased wife's will.
>
> * * * *
>
> [A]s set forth in the [Commission] commentary to section 2210(b), the six-month statutory period may be waived by the

predecessor versions of section 2210. **See Jabbour**, 276 A.3d, at 1189-91 (explaining and reaffirming its holding in **In re Daub's Estate**, 157 A. 908 (Pa. 1931), which involved a predecessor statute).

- 8 -

court when gross injustice would otherwise result. [Enderes] claims that no proof of gross injustice may be found on the record. However, the surviving spouse here is an incapacitated person. The record reflects that the surviving spouse here receives medical assistance through the [DPW] and that if the surviving spouse does not make a spousal election that maximizes his assets following the death of his wife, he stands to lose any government assistance he may be entitled to from the [DPW]. ([**See** N.T.], 10/21/21, [at] 13, 40; [**see also**] Resp. Trial Memo., 10/19/21, at 7). In . . . **Wyinegar**, [the Court explained that] the failure [by the incapacitated surviving spouse] to take the election could potentially compromise his entitlement to continued medical assistance in addition to denying him the benefit of the elective share. . . . 711 A.2d [at 494-95] . . .. The [**Wyinegar**] Court stated[:]

> The Commonwealth Court has held that the [DPW] is proper to deny benefits to a surviving spouse who has refused to obtain an available resource. . . . [T]he state regulations for the [DPW] require that individuals who apply for assistance obtain all resources to which they are entitled. Failure to do so renders the individual ineligible for benefits. . . . [T]he regulations make it clear that assistance is 'intended to supplement, and not to replace, any available or continuing resources which an individual may have.'"

[**Id**.] (quoting **Armlovich v. Dept. of Welfare**, 411 A.2d 893, 895 (Pa. Cmwlth. 1980) (quoting 55 Pa. Code. § 177.21(b) (amended 1989)). . . ..

\* \* \* \*

. . . As the [court in **In re Estate of Lutz**, 24 D. & C.3d 181, 185 (Clinton 1982)] noted, "[t]o the extent [the incapacitated surviving spouse] is deprived of her right to elect against the will, the public will be required to maintain her. This may be advisable from her heirs' standpoint, but the court is not convinced that is advisable from her standpoint." . . ..

\* \* \* \*

- 9 -

In the matter before the court, [Mr. Garbutt's co-guardians were] required to pursue the spousal election on behalf of the incapacitated spouse. Like the incapacitated spouses in **Wyinegar**, *supra*, and **Lutz**, *supra*, the surviving spouse here stands to lose his medical assistance benefits if he does not utilize all available resources, including those to which he may be entitled via the death of his spouse, including the spousal elective share if it increases his assets, and would place the extra burden of meeting the default on the taxpayers of the Commonwealth. The Executor's objection, therefore, just as recognized in **Wyinegar**, *supra*, and **Lutz**, *supra*, in essence also advances the premise that private legatees should benefit at public expense. . . ..

* * * *

In the matter before the court, there is no question that counsel for the incapacitated surviving spouse was pursuing the surviving spouse's rights diligently both before and during the Covid-19 pandemic. [Attorney McKenna] was in continuous communication with the Estate over the available assets, the need to transfer funds from the supplemental needs trust to a special needs trust, the need to obtain court approval to do so as well as approval from the [DHS], and the surviving spouse's intention with respect to the spousal election. Because the surviving spouse here is an incapacitated person, making the spousal election on his behalf is more complicated than it would be for a surviving spouse without such comprehensive disabilities. The record shows that counsel for the surviving spouse was acting diligently in pursuing his rights with respect to the spousal election.

[Additionally, this court] find[s] that . . . the Covid-19 pandemic specifically hampered [Attorney McKenna's] ability to file [Mr. Garbutt's] formal election by the statutory deadline. [Attorney McKenna] explained how his office was closed and he had no staff to prepare the election and file it with the court. Many court operations were suspended and time calculations for purposes of time computations and time limitations relevant to court cases were held in abeyance. [**See**] **Hart v. Philadelphia Inquirer, PBC**, 258 A.3d 519 . . . n.1 (Pa. Super. 2021). [Attorney McKenna] filed the spousal election on June 15, 2020, fourteen (14) days after the expiration of the judicial emergency engendered by the Covid-19 pandemic and only twenty-one (21) or twenty-two (22) days after the expiration of the statutory filing period. We find that [Attorney McKenna] has adequately

- 10 -

demonstrated that the Covid-19 pandemic directly impeded his ability to comply with the statutory limitations period concerning spousal elections. . . ..

Orphans' Court Opinion, 4/12/22, at 10-17 (unnecessary capitalization and footnote omitted).

As explained above, an orphans' court decision will not be reversed absent an abuse of discretion or a fundamental error in applying the correct principles of law. **See Luongo**, 823 A.2d 942 at 951. Here, we discern no such abuse of discretion or error by the orphans' court in denying Enderes's petition to strike.

In making our determination, we are initially guided by the language of section 2210(b), along with the official and drafting commission comments to that statutory provision. Section 2210(b) expressly contemplates that the orphans' court may extend the six-month period in which to file a spousal election when circumstances exist that warrant such an extension. Indeed, the statute provides that the orphans' court may grant an extension "**upon such terms and conditions as the court shall deem proper under the circumstances** on application of the surviving spouse filed with the clerk within the foregoing time limit." 20 Pa.C.S.A. § 2210(b) (emphasis added); **see also** 20 Pa.C.S.A. § 2210(b) Cmt (providing that "**[s]ubsection (b) sets forth the rules generally followed by the Pennsylvania courts in the ordinary cases but gives the court power to supplement and to depart from them to avoid inequities**" (emphasis added)); 4 Remick's

- 11 -

Pennsylvania Orphans' Court Practice § 31.18 (providing the Commission Comment to section 2210(b), which reflects the Commission's intention that the six-month time period set forth in section 2210(b) "***may be waived by the court if `gross injustice would result***'" (emphasis added)).[4]

Although the co-guardians for Mr. Garbutt did not file an application for an extension of time within the statutory time period, the orphans' court determined that the deadline should be equitably tolled due to the extraordinary circumstances presented during the two months prior to the expiration of the election period. Those circumstances included the global Covid-19 pandemic which caused numerous shut-downs and closures, including the shut-down of the orphans' court to all non-essential business and the shut-down of Attorney McKenna's law firm offices. ***See*** Orphans' Court Opinion, 4/12/22, at 3. Moreover, starting on March 18, 2020, the Supreme Court of Pennsylvania issued a series of emergency orders in

_____

[4] We are mindful that, as noted above, the Statutory Construction Act provides that the text of the statute shall control in the event of a conflict between the text and the comments of a commission which drafted the statute. ***See*** 1 Pa.C.S.A. § 1939. However, we discern no conflict between the language of section 2210(b) and the official and drafting commission comments. Section 2210(b) expressly provides that "[t]he court may extend the time for election for such period and upon such terms and conditions as the court shall deem proper under the circumstances . . .." 20 Pa.C.S.A. § 2210(b). This permissive and broad language is in entirely consistent with the official and drafting commission comments which give the trial court "the power to supplement and depart from" and "waive" the six-month statutory deadline "to avoid inequities" or "if `gross injustice would result.'" 20 Pa.C.S.A. § 2210(b) Cmt; 4 Remick's Pennsylvania Orphans' Court Practice § 31.18.

response to the COVID-19 pandemic which, among other things, ordered the statewide closure of all courts to the public and the suspension of all filing deadlines until June 1, 2020. ***See In re General Statewide Judicial Emergency***, 229 A.3d 229 (Pa. 2020); ***In re General Statewide Judicial Emergency***, 230 A.3d 1015 (Pa. 2020); ***In re General Statewide Judicial Emergency***, 234 A.3d 408 (Pa. 2020)]. Thus, the co-guardians had until June 1, 2020, to file the spousal election on behalf of Mr. Garbutt.

Further, at the hearing on Enderes's petition to strike, Attorney McKenna testified that Enderes had been on notice that Mr. Garbutt intended to elect against Decedent's will since December 19, 2019, when Attorney McKenna emailed counsel for the Estate to introduce himself and advise that Mr. Garbutt would be electing against the Decedent's will. ***See*** N.T., 10/21/21, at 12-13; ***see also*** Exhibit R1 (a copy of the December 19, 2019 email from Attorney McKenna to Enderes's counsel asking if they could speak about the Estate assets and advising that Mr. Garbutt would be electing against the will following the establishment of—and court approval for—a special needs trust that would qualify under DHS rules). During January 2020, counsel for both parties communicated regarding the steps being taken by Attorney McKenna to facilitate the spousal election, and the information needed from the Estate. ***See*** N.T., 10/21/21, at 13-15; ***see also*** Exhibit R2 (a copy of the January 20, 2020 email from Attorney McKenna to Attorney Kaune thanking him for his recent phone call and requesting documentation from the Estate to facilitate

Mr. Garbutt's election against the Decedent's will); Exhibit R3 (a copy of the January 23-31, 2020 email chain between Attorney McKenna and Attorney Kaune regarding documentation provided by the Estate and requesting more documentation from the Estate). Attorney McKenna testified that, when he filed the petition for approval of the special needs trust on February 20, 2020, the Estate was aware that Mr. Garbutt would be filing a spousal election against the will. *See* N.T., 10/21/21, at 21. Attorney McKenna thereafter emailed Attorney Kaune on March 11, 2020, indicating that once approval for the special needs trust was received from the DHS, Mr. Garbutt would be filing a notice of election against Decedent's will. *Id*. at 21-22; *see also* Exhibit R6 (a copy of the March 11, 2020 email from Attorney McKenna to Attorney Kaune). On May 12, 2020, Attorney Kaune sent an email to Attorney McKenna providing a summary of what was known about Decedent's Estate, and attaching an inventory of Estate assets. *See* N.T., 10/21/21, at 23-24; *see also* Exhibit R7 (a copy of the May 12, 2020 email exchange between Attorney McKenna and Attorney Kaune, along with the spreadsheet of assets provided by Attorney Kaune indicating Estate assets totaling more than $300,000). Attorney McKenna indicated that, due to the Covid-19 global pandemic, his law firm office was shut down in March 2020, and did not partially reopen until early June 2020. *Id*. at 34. Attorney McKenna explained that, while his law firm office was closed, there was no staff to type or file. *Id*. at 23.

Under these unprecedented circumstances, the orphans' court deemed it proper to grant a short, fourteen-day, extension to the June 1, 2020 filing deadline in order to avoid inequities and gross injustice. *See* 20 Pa.C.S.A. § 2210(b) Cmt; 4 Remick's Pennsylvania Orphans' Court Practice § 31.18. This was certainly not an ordinary case due to the surviving spouse being an incapacitated person and the numerous difficulties presented by the global Covid-19 pandemic. Further, the time period proscribed by section 2210(b) represents a procedural rule rather than a jurisdictional deadline, such that the orphans' court was not divested of jurisdiction over the matter by the untimeliness of the filing. *See*, *e.g.*, *Kurtas v. Kurtas*, 555 A.2d 804, 806 (Pa. 1989) (holding that trial courts have the discretion to entertain untimely motions for post-trial relief because the 10-day time period under Pa.R.Civ.P. 227.1 is not a jurisdictional requirement, but merely a procedural rule); *Sass v. AmTrust Bank*, 74 A.3d 1054, 1063 (Pa. Super. 2013) (holding that an untimely appeal divests this Court of jurisdiction to hear the merits of the case). Moreover, Enderes was on notice that Mr. Garbutt intended to elect against Decedent's will for most of the statutory period. Indeed, counsel for both parties had been communicating consistently since December 2019 regarding the steps being taken to facilitate the spousal election, including creating a special needs trust, obtaining orphans' court approval for the special needs trust, obtaining DHS approval for the special needs trust, and obtaining an inventory of Estate assets from Attorney Kaune. ***See***

*McCutcheon's Estate*, 128 A. at 845 (explaining that "[t]he purpose of the legislation was to give accurate information to the executor of the purpose of the [surviving] husband or wife, so that a proper adjustment of the assets could be made").  Accordingly, under the facts and circumstances of this particular case,[5] we conclude that the orphans' court did not abuse its discretion or commit error by departing from the six-month statutory time period in order to avoid the inequities to Mr. Garbutt which would otherwise result from a strict interpretation and enforcement of the time limit.[6]

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2023

_____

[5] Our holding is expressly limited to the particular facts and unprecedented circumstances presented to this Court in this case, and recognize that the outcome might be different with factual and circumstantial variations.

[6] As explained above, Decedent's will made no provision for Mr. Garbutt. Instead, Decedent left her entire Estate to Enderes.  Thus, had the orphans' court not equitably tolled the filing deadline and accepted Mr. Garbutt's untimely spousal election to take against Decedent's will, he would have received nothing from the Estate, and would be at risk of losing his eligibility or benefits from the DPW.