**Dustin C. SAMS, an incapacitated person, by Julie L. Raybuck, guardian, Petitioner**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 31, 2013.
Decided Aug. 21, 2013.

Robert J. Donahoe, Bethel Park, for petitioner.

Anthony L. Marone, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, Judge, McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge McCULLOUGH.

Dustin C. Sams (Sams), by his guardian and mother, Julie L. Raybuck (Raybuck), petitions for review of the November 15, 2012 final administrative action order of the Department of Public Welfare (DPW) affirming the determination of an administrative law judge (ALJ) that Sams is ineligible for Medicaid/Home and Community Based Service Long Term Care (HCBS-LTC)[1] from July 1, 2012, to November 22, 2014, because he transferred an asset, valued at $232,474.15, for less than fair market value. For the reasons that follow, we affirm.

On July 16, 2006, Sams was driving a motorcycle when he was struck by a vehicle driven by Walter C. Slaugenhoup (Slaugenhoup). (Reproduced Record (R.R.) at 2a.) Allstate Insurance Company (Allstate Insurance) insured Slaugenhoup. (*Id.*) Sams sustained a brain injury and Raybuck was appointed his legal guardian. (Sams's brief at 4–5.) Sams filed a lawsuit in the Court of Common Pleas of Clarion County against the operator of the motor vehicle who caused the accident and settled his personal injury case with Allstate Insurance on November 26, 2008, in the amount of $380,000.00. (R.R. at 2a, 5a.) From this sum, Sams received a cash payment in the amount of $147,525.85 to pay for attorney's fees, expenses, and a DPW lien, and he agreed to a structured settlement annuity for the remainder of the settlement proceeds in the amount of $232,474.15. (ALJ's op. at 7.) Beginning February 13, 2012, Sams received monthly payments of $967.23, payable at an annual interest rate of 3% for 360 months to continue for the remainder of Sams's life. (R.R. at 6a–7a.) The settlement agreement provided that Allstate Insurance would make a qualified assignment of its obligation to make payments to Allstate Assignment Company (Allstate Assignment), thereby releasing Slaugenhoup and Allstate Insurance from the obligation of periodic payments. (R.R. at 8a.) Further, the settlement agreement stated that either Allstate Insurance or its assignee would purchase an annuity from Allstate Life Insurance Company (Allstate Life) to fund the monthly payments and that Allstate Insurance or its assignee would be the sole owner of the annuity. (R.R. at 9a.) (Sams does not own the annuity.)

Allstate Insurance funded this obligation with a payment of $232,474.15 to Allstate Assignment in order to purchase an annuity from Allstate Life. (ALJ's Finding of Fact No. 4; R.R. at 8a–9a.) Raybuck is the primary beneficiary and Rachel Raybuck, Sams's sister, is the secondary beneficiary of the annuity. (R.R. at 13a.) Prior to receiving the monthly annuity payments, Sams received Supplemental Security Income (SSI) and HCBS-LTC. (ALJ's Finding of Fact No. 7.) The SSI stopped when Sams started receiving the monthly annuity payments. (*Id.*) Additionally, because of these monthly payments, Sams had to reapply for HCBS-LTC. (ALJ's Finding of Fact No. 8.)

By letter dated May 22, 2012, the Clarion County Assistance Office (CAO) informed Sams that he was eligible for medical assistance effective May 1, 2012. However, the CAO also determined that Sams disposed of a total of $233,474.00 in assets without receiving fair market value,

1. Medicaid was created to provide federal financial assistance to states that choose to reimburse certain medical costs to those individuals who qualify for the program. *Bird v. Department of Public Welfare,* 731 A.2d 660, 663 (Pa.Cmwlth.1999). "A state plan for medical assistance must ... comply with the provisions of section [1902] of this title with respect to ... transfers of assets." 42 U.S.C. § 1396a(a)(18).

which resulted in the CAO imposing a period of ineligibility for the payment of HCBS–LTC from July 1, 2012, to November 22, 2014. (R.R. at 23a.)

Sams appealed to DPW and an ALJ held a hearing on August 8, 2012. Amy Oritz (Oritz), an income maintenance caseworker for DPW, testified regarding Sams's settlement and medical assistance benefits. Oritz also testified regarding the CAO's determination of Sams's medical assistance eligibility, stating that the CAO determined that Sams's annuity did not meet the requirements of the Deficit Reduction Act of 2005(DRA) [2] because it did not have equal monthly payments over his life expectancy and it did not list DPW as the primary beneficiary. (Notes of Testimony (N.T.) at 7–8, DPW's exhibits 1–3.)

DPW found that Sams disposed of $233,474.00 by purchasing a non-DRA compliant annuity with proceeds from the settlement of his personal injury case. Specifically, by order dated November 9, 2012, the ALJ denied Sams's appeal, because the ALJ found that Sams agreed to an annuity that is not DRA-compliant, as payments were deferred from November 2008, until February 2012, and DPW is not the primary beneficiary as required by section 1917(c)(1)(F), (G) of the Social Security Act.[3] (ALJ's op. at 8.) Thus, the ALJ concluded that the CAO correctly determined that the purchase of the annuity was a transfer of assets for less than fair market value and correctly imposed a penalty period for the HCBS–LTC.[4] (ALJ's op. at 8.) By final administrative action order entered November 15, 2012, DPW's Chief ALJ affirmed the decision of the ALJ.

On appeal,[5] Sams argues that the record does not establish that he had actual or constructive receipt or possession of the $232,474.15 to purchase the annuity, and, thus, DPW erred by concluding that he transferred an asset for less than fair market value. Sams asserts that the only consideration that he received from the settlement agreement was a promise to receive a monthly payment of $967.23.

*Discussion*

*Assets*

Initially, we must determine whether Sams had an asset to transfer. DPW regulations define "assets" as follows:

> Income and resources of the individual . . . including income or resources which the individual . . . is *entitled to* but does not receive because of action by one of the following:
>
> (i) The individual. . . .
>
> (ii) A person or a court or administrative body with legal authority to act in place of, or on behalf of, the individual. . . .

2. Act of February 8, 2006, P.L. 109–171, 120 Stat. 4. In relevant part, section 6012 of the DRA provides the disclosure requirements for annuities for medical assistance eligibility determination.

3. Act of August 14, 1935, P.L. 74–271, *as amended*, 42 U.S.C. § 1396p(c)(1)(F), (G). Section 1917(c)(1)(F), (G) provides the criteria for the treatment of annuities for medical assistance eligibility determination.

4. The ALJ determined that the CAO based the penalty period calculations on an incorrect amount of $233,474.00, and corrected the amount to $232,474.15. (ALJ's order.)

5. Our scope of review in appeals from DPW orders is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with law, and whether the necessary findings are supported by substantial evidence. *Lancashire Hall Nursing & Rehabilitation Center v. Department of Public Welfare*, 995 A.2d 540, 542 (Pa. Cmwlth.2010).

(iii) A person or a court or administrative body acting at the direction or upon the request of the individual....

55 Pa.Code § 178.2 (emphasis added); *see* 42 U.S.C. § 1396p(h)(1).[6]

Federal regulations further define assets, stating that, "with respect to a transfer of assets, the term 'assets' includes an annuity *purchased* by or *on behalf of an annuitant* who has applied for medical assistance with respect to nursing facility services or other long-term care services...." 42 U.S.C. § 1396p(c)(1)(G) (emphasis added). All assets and resources that are available to pay for medical services and care, including resources from negligence actions or other tort actions, must be made available and used to the fullest extent possible before DPW, as the payer of last resort, makes any payments to cover medical expenses. 55 Pa.Code §§ 178.1(g), 178.6(a), (b)(7); *see also Perna ex rel. Bekus v. Department of Public Welfare,* 807 A.2d 310, 314 (Pa.Cmwlth. 2002) (holding that a Medicaid applicant's election against an estate qualified as a resource for determination of Medicaid eligibility); *Estate of Wyinegar,* 711 A.2d 492, 495 (Pa.Cmwlth.1998) (holding that a Medicaid applicant's failure to "obtain all resources to which [the applicant was] entitled" rendered the applicant ineligible for Medicaid benefits).

Sams argues that he never had actual or constructive receipt of the $232,474.15 to purchase an annuity, and, thus, he did not have an asset in his possession. However, there is substantial evidence in the record to show that Sams was entitled to the total amount of $380,000.00, from which he assigned $232,474.15 to Allstate Insurance for the purchase of an annuity that pays him $967.23 per month. Though Sams was never in actual possession of the $232,474.15 used to purchase the annuity on his behalf, Sams has at all times been entitled to this settlement money, and, thus, the record supports DPW's determination that the annuity is Sams's asset, 55 Pa.Code § 178.2; 42 U.S.C. § 1396p(c)(1)(G), (h)(1), and that he is required to make it available and use it before DPW makes payments to him for medical care. 55 Pa.Code § 178.1(g) ("An applicant/recipient shall take reasonable steps to obtain and make available resources to which he is, or may be, entitled unless he can show good cause for not doing so."); 55 Pa.Code § 178.6(a) ("An applicant/recipient may have sources other than [medical assistance] that cover the cost of his medical services and care. The third-party liability sources which are available to pay for medical services and care shall be identified and used to the fullest extent possible before payment is made by [medical assistance]. The Department is the payer of last resort."); 55 Pa.Code § 178.6(b)(7) ("Third-party resources include, but are not limited to ... [n]egligence action or other tort.").

Sams also argues that Internal Revenue Service Revenue Ruling (Revenue Ruling) 79–220 states that a plaintiff in a personal injury action is not charged with actual or constructive receipt of a lump sum that is invested to yield a monthly payment in a structured settlement. (*see* R.R. at 52a–53a.) However, the record lacks evidence that a Revenue Ruling supersedes federal and state law for HCBS–LTC eligibility determinations concerning transfers of assets. Further, resources from negligence actions or other tort actions must be made available to DPW. *See* 55 Pa.Code § 178.6(a), (b)(7).

### *Transfer of Assets for Less than Fair Market Value*

■ Sams was entitled to the total amount of $380,000.00 from his personal

6. Except where noted, DPW regulations essentially mirror the federal regulations.

injury settlement, and, accordingly, Sams transferred an asset to Allstate Life when the annuity was purchased for his benefit. We must determine whether the purchase of the annuity constituted a transfer of assets for less than fair market value. DPW regulations define "fair market value" as "the price which property can be expected to sell for on the open market or would have been expected to sell for on the open market in the geographic area in which the property is located." 55 Pa. Code § 178.2. "An institutionalized individual who disposes of assets for less than [fair market value] on or after the look back date ... is ineligible for [medical assistance] for [nursing facility care]...." 55 Pa.Code § 178.104(b); *see also* 42 U.S.C. § 1396 p(c)(1)(A). An institutionalized individual is one "who is receiving nursing care." 55 Pa.Code § 178.2; *see also* 42 U.S.C. § 1396p(h)(3). The federal regulations further expand the definition of institutionalized individuals as including individuals "who would be eligible under the State plan ... if they were in a medical institution, with respect to whom there has been a determination that but for the provision of home or community-based services ... they would require the level of care provided in a ... nursing facility."[7] 42 U.S.C. § 1396a(a)(10)(A)(ii)(VI).

For medical assistance applications made on or after March 3, 2007, DPW regulations provide for a 60-month look-back period for assets transferred on or after February 8, 2006. 55 Pa.Code § 178.104a(a); *see also* 42 U.S.C. § 1396 p(c)(B)(i), (ii)(II). "Consistent with section 1917(c)(1)(E)(iv) and (H) of the Social Security Act ... a period of ineligibility for payment of long-term care services will result when an applicant ... disposes of assets for less than fair market value on or after February 8, 2006." 55 Pa.Code § 178.104a(d).[8] Further, "[c]onsistent with section 1917(c)(1)(D) of the Social Security Act ... in the case of a transfer of assets for less than fair market value made on or after February 8, 2006, by an applicant ... the penalty period shall commence on the date the applicant would ... be eligible for Medicaid...." 55 Pa.Code § 178.104a(b).

DPW regulations address whether the purchase of an annuity is to be considered a transfer of assets for fair market value when determining medical assistance eligibility:

> (h) [T]he purchase of an annuity by an applicant ... on or after February 8, 2006, that does not meet all of the following requirements, will be treated as a transfer of assets for less than [fair market value]:
>
> (1) The annuity must be irrevocable and nonassignable.
>
> (2) The annuity must be actuarially sound.
>
> (3) The annuity must provide for payments in equal amounts, with no deferral and no balloon payments made.
>
> (4) The annuity must name [DPW] as the remainder beneficiary in the first position for at least the total amount of medical assistance paid by [DPW] on behalf of the recipient.

55 Pa.Code § 178.104a(h)(1)-(4); *see also* 42 U.S.C. § 1396p(c)(1)(F)(i), (G)(ii)(I)-(III).

7. The record reflects that Sams received nursing care at home.

8. "The period of ineligibility shall be determined by dividing the total cumulative uncompensated value of all assets disposed of by the applicant ... on or after the look-back date, by the average daily private pay rate in effect at the time the application is processed." 55 Pa.Code § 178.104a(d); *see also* 42 U.S.C. § 1396p(c)(1)(E)(i)(I), (II).

There is ample evidence in the record to show that, for purposes of determining medical assistance eligibility, Sams transferred an asset for less than fair market value under both federal and state criteria. First, Allstate Life does not pay Sams equal payments for the duration of the annuity, as the payments increase 3% each year for the first 360 months. 55 Pa.Code § 178.104a(h)(3); 42 U.S.C. § 1396p(c)(1)(G)(ii)(III). Second, under the settlement agreement, the parties deferred the payments from November 2008 until February 2012. *Id.* Third, Sams's annuity failed to list DPW as the remainder beneficiary in the first position for at least the total amount of medical assistance paid to him. 55 Pa.Code § 178.104a(h)(4); 42 U.S.C. § 1396p(c)(1)(F). Thus, the record supports DPW's determination that Sams transferred an asset for less than fair market value and that a penalty period is required for Sams's HCBS–LTC benefits.

Accordingly, we affirm.

## *ORDER*

AND NOW, this 21st day of August, 2013, the November 15, 2012 final administrative action order of the Department of Public Welfare is affirmed.

